Barry I. Levy, Esq.
Frank P. Tiscione, Esq.
Philip P. Nash, Esq.
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Liberty Mutual Insurance Company,
Liberty Mutual Fire Insurance Company, Liberty Insurance
Corporation, The First Liberty Insurance Corporation, LM
Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance
Company, Liberty County Mutual Insurance Company, LM
Property and Casualty Insurance Company, Safeco Company
of Indiana, and American States Insurance Company*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL FIRE INSURANCE COMPANY,
LIBERTY INSURANCE CORPORATION, THE FIRST
LIBERTY INSURANCE CORPORATION, LM
INSURANCE CORPORATION, LIBERTY MUTUAL
MID-ATLANTIC INSURANCE COMPANY, LIBERTY
COUNTY MUTUAL INSURANCE COMPANY, LM
PROPERTY and CASUALTY INSURANCE COMPANY,
SAFECO COMPANY OF INDIANA, and AMERICAN
STATES INSURANCE COMPANY,

Docket No.:_____ (      )

**Plaintiff Demands a Trial by
Jury**

Plaintiffs,

-against-

AKIVA ORTHO SUPPLY LLC, BH ORTHO SUPPLY
INC., BIOMETRIC SIGN INC., CONCEPT LINE INC.,
GLOBAL VERSUS INC., HATZALAH O.S. INC., HN
DME ORTHO SUPPLY INC., MB CENTURY INC., NK
RELIABLE ORTHO SUPPLY INC., RAMBAM ORTHO
SUPPLY INC., SKYLINE BK INC., TOPAZ V INC., VR
ORTHO INC., NINA KOMISAR, VIKTOR RESHYLOV,
VOLODYMYR RESHYLOV, ZINAIDA RESHYLOVA,
VLADYSLAV SAVCHYN, NATALIIA SAVCHYNA,
MIKHAILO SPORYKHIN, VIKTORIIA SPORYKHINA,
and JOHN DOE DEFENDANTS "1-10,"

Defendants.
----------------------------------------------------------------X

## COMPLAINT

Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company (collectively "Liberty Mutual" or "Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

## INTRODUCTION

1.      Liberty Mutual brings this action to recover more than $490,000.00 that Defendants have wrongfully obtained from Liberty Mutual by submitting and causing to be submitted hundreds of fraudulent no-fault insurance charges relating to medically unnecessary, illusory, and otherwise non-reimbursable durable medical equipment ("DME") and orthotic devices ("OD") (e.g. lumbar-sacral supports, positioning car seats, shoulder orthoses, knee orthoses, osteogenesis bone stimulators, and joint stimulator devices) (collectively, the "Fraudulent Equipment") through a series of companies known as Akiva Ortho Supply LLC ("Akiva Ortho"), BH Ortho Supply Inc. ("BH Ortho"), Biometric Sign Inc. ("Biometric Sign"), Concept Line Inc. ("Concept Line"), Global Versus Inc. ("Global Versus"), Hatzalah O.S. Inc. ("Hatzalah OS"), HN DME Ortho Supply Inc. ("HN DME Ortho"), MB Century Inc. ("MB Century"), NK Reliable Ortho Supply Inc. ("NK Reliable Ortho"), Rambam Ortho Supply Inc. ("Rambam Ortho"), Skyline BK Inc. ("Skyline BK"), Topaz V Inc. ("Topaz V"), and VR Ortho Inc. ("VR Ortho") (collectively, the "DME Providers").  The DME Providers are each New York corporations that since 2022 have dispensed DME to persons who were allegedly involved in and injured by automobile accidents and were eligible for coverage under no-fault insurance policies issued by Liberty Mutual ("Insureds").

2.      This vast array of companies are purportedly owned by Nina Komisar ("N. Komisar"), Viktor Reshylov ("Vi. Reshylov"), Volodymyr Reshylov ("Vo. Reshylov"), Zinaida Reshylova ("Z. Reshylova"), Vladyslav Savchyn ("V. Savchyn"), Nataliia Savchyna ("N. Savchyna"), Mikhailo Sporykhin ("M. Sporykhin"), and Viktoriia Sporykhina ("V. Sporykhina") (collectively, the "Paper Owner Defendants"), who in conjunction with others not presently identifiable to Liberty Mutual, devised a scheme to obtain medically unnecessary and often photocopied prescriptions from healthcare providers working out of no-fault clinics in the New York metropolitan area (the "Referring Providers") through unlawful kickbacks and other financial incentives.  Once the medically unnecessary prescriptions were secured, the Defendants then billed Liberty Mutual collectively more than $1.5 million and shifted the billing from one DME Provider to the next beginning in 2022 and continuing through today.

3.      Liberty Mutual seeks to recover more than $490,000.00 that has been wrongfully obtained by the DME Providers, the Paper Owner Defendants, and the John Doe Defendants "1" – "10" (the "John Doe Defendants") (collectively, the "Defendants") since 2022 and, further, seeks a declaration that it is not legally obligated to pay reimbursement of more than $1 million in pending no-fault insurance claims that have been submitted by or on behalf of the DME Providers because:

> (i)     The Defendants billed Liberty Mutual for Fraudulent Equipment when they were ineligible to collect No-Fault Benefits because they failed to comply with local licensing requirements;
>
> (ii)    The Defendants billed Liberty Mutual for Fraudulent Equipment purportedly provided to Insureds as a result of unlawful financial arrangements with others who are not presently identifiable;
>
> (iii)   The Defendants billed Liberty Mutual for Fraudulent Equipment that was not medically necessary and provided – to the extent provided – pursuant to prescriptions purportedly issued by the Referring Providers as a result of predetermined fraudulent protocols, which were solely to financially enrich

the Defendants and others not presently known rather than to treat the Insureds;

(iv)    The Defendants billed Liberty Mutual for Fraudulent Equipment that was provided – to the extent provided – as a result of decisions made by laypersons, not based upon prescriptions issued by the Referring Providers who are the only ones licensed to issue such prescriptions; and

(v)     To the extent that any Fraudulent Equipment was provided to Insureds, the bills for Fraudulent Equipment submitted to Liberty Mutual by the Defendants fraudulently misrepresented the type and nature of the Fraudulent Equipment purportedly provided to Insureds as the Healthcare Common Procedure Coding System ("HCPCS") Codes identified in the bills did not accurately represent what was provided to Insureds.

4.      The Defendants fall into the following categories:

(i)     The DME Providers are New York corporations that purport to purchase DME and OD from wholesalers, purport to provide Fraudulent Equipment to automobile accident victims, and bill New York automobile insurance companies, including Liberty Mutual, for the Fraudulent Equipment;

(ii)    Defendant N. Komisar is listed on paper as the owner, operator, and controller of NK Reliable Ortho when, as discussed below, N. Komisar works for one of the John Doe Defendants who secretly controls and profits from all the DME Providers, and used NK Reliable Ortho to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims;

(iii)   Defendant Vi. Reshylov is listed on paper as the owner, operator, and controller of VR Ortho, when, as discussed below, Vi. Reshylov works for one of the John Doe Defendants who secretly controls and profits from all the DME Providers, and used VR Ortho to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims;

(iv)    Defendant Vo. Reshylov is listed on paper as the owner, operator, and controller of Akiva Ortho and Concept Line, when, as discussed below, Vo. Reshylov works for one of the John Doe Defendants who secretly controls and profits from all the DME Providers, and used Akiva Ortho and Concept Line to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims;

(v)     Defendant Z. Reshylova is listed on paper as the owner, operator, and controller of Biometric Sign and Skyline BK, when, as discussed below, Z. Reshylova works for one of the John Doe Defendants who secretly controls

and profits from all the DME Providers, and used Biometric Sign and Skyline BK to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims;

(vi)     Defendant N. Savchyna is listed on paper as the owner, operator, and controller of MB Century, when, as discussed below, N. Savchyna works for one of the John Doe Defendants who secretly controls and profits from all the DME Providers, and used MB Century to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims;

(vii)    Defendant V. Savchyn is listed on paper as the owner, operator, and controller of Global Versus and Topaz V, when, as discussed below, V. Savchyn works for one of the John Doe Defendants who secretly controls and profits from all the DME Providers, and used Global Versus and Topaz V to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims;

(viii)   Defendant M. Sporykhin is listed on paper as the owner, operator, and controller of HN DME Ortho and Rambam Ortho, when, as discussed below, M. Sporykhin works for one of the John Doe Defendants who secretly controls and profits from all the DME Providers, and used HN DME and Rambam Ortho to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims;

(ix)     Defendant V. Sporykhina is listed on paper as the owner, operator, and controller of BH Ortho and Hatzalah OS, when, as discussed below, V. Sporykhina works for one of the John Doe Defendants who secretly controls and profits from all the DME Providers, and used BH Ortho and Hatzalah OS to submit bills to Liberty Mutual and other New York automobile insurance companies for Fraudulent Equipment purportedly provided to automobile accident victims; and

(x)      John Doe Defendants "1" - "10" (the "John Doe Defendants") are citizens of New York and are presently not identifiable but are: (i) secretly controlling and profiting from the DME Providers; (ii) associated with the Referring Providers and various multi-disciplinary medical offices that purportedly treat high-volume of No-Fault insurance patients (the "Clinics") and are the sources of prescriptions to the DME Providers; and/or (iii) conspired with the Paper Owner Defendants to further the fraudulent schemes against Liberty Mutual and other automobile insurers.

5.      As discussed below, the Defendants have always known that the claims for

Fraudulent Equipment submitted to Liberty Mutual were fraudulent because:

(i)      The bills for Fraudulent Equipment submitted by the Defendants to Liberty
         Mutual knowingly misrepresented that the Defendants complied with all
         local licensing requirements when the Defendants were not lawfully
         licensed to provide the Fraudulent Equipment by the New York City
         Department of Consumer and Worker Protection (formerly Department of
         Consumer Affairs), as they misrepresented their ownership and business
         premises address for each of the DME Providers;

(ii)     The Fraudulent Equipment was provided – to the extent that any Fraudulent
         Equipment was provided – based upon illegitimate prescriptions, including
         photocopied prescriptions, received as a result of unlawful financial
         arrangements between the Defendants and others who are not presently
         identifiable and, thus, not eligible for no-fault insurance reimbursement in
         the first instance;

(iii)    The prescriptions for Fraudulent Equipment were not medically necessary
         and the Fraudulent Equipment was provided – to the extent provided –
         pursuant to predetermined fraudulent protocols designed by the Defendants
         and others not presently identifiable to Liberty Mutual, which was solely to
         financially enrich the Defendants and others not presently known, rather
         than to treat or otherwise benefit the Insureds;

(iv)     The Fraudulent Equipment was provided – to the extent provided – as a
         result of decisions made by laypersons, not based upon prescriptions
         actually issued by healthcare providers who are licensed to issue such
         prescriptions; and

(v)      To the extent that any Fraudulent Equipment was provided to Insureds, the
         bills for Fraudulent Equipment submitted by the Defendants to Liberty
         Mutual – and other New York automobile insurers – knowingly
         misprepsented the type and nature of the Fraudulent Equipment purportedly
         provided to the Insureds as the HCPCS Codes identified in the bills did not
         accurately represent what was actually provided to Insureds.

6.      As such, the Defendants do not now have – and never had – any right to be

compensated for the Fraudulent Equipment billed to Liberty Mutual through the DME Providers.

7.      The charts attached hereto as Exhibits "1" through "13", set forth a representative

sample of the fraudulent claims that have been identified to date that were submitted, or caused to

be submitted, to Liberty Mutual pursuant to the Defendants' fraudulent scheme using Akiva Ortho,

BH Ortho, Biometric Sign, Concept Line, Global Versus, Hatzalah OS, HN DME Ortho, MB Century, NK Reliable Ortho, Rambam Ortho, Skyline BK, Topaz V, and VR Ortho.

8.     As a result of the Defendants' fraudulent scheme, Liberty Mutual has incurred damages of more than $490,000.00.

## **THE PARTIES**

### I.     **Plaintiffs**

9.     Plaintiffs Liberty Mutual Insurance Company and Liberty Mutual Mid-Atlantic Insurance Company are Massachusetts corporations with their principal place of business in Boston, Massachusetts.  Liberty Mutual Insurance Company and Liberty Mutual Mid-Atlantic Insurance Company are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

10.     Plaintiffs Liberty Insurance Corporation, The First Liberty Insurance Corporation and LM Insurance Corporation are Illinois corporations with their principal place of business in Boston, Massachusetts.  Liberty Insurance Corporation, The First Liberty Insurance Corporation and LM Insurance Corporation are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

11.     Plaintiff Liberty Mutual Fire Insurance Company is a Wisconsin corporation with its principal place of business in Boston, Massachusetts.  Liberty Mutual Fire Insurance Company is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

12.     Plaintiff Liberty County Mutual Insurance Company is a Texas corporation with its principal place of business in Boston, Massachusetts.  Liberty County Mutual Insurance Company is authorized to conduct business and to issue policies of automobile insurance in the State of New York.

13.    Plaintiffs LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company are Indiana corporations with its principal place of business in Boston, Massachusetts.  LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company are authorized to conduct business and to issue policies of automobile insurance in the State of New York.

## II.    Defendants

14.    Defendant N. Komisar resides in and is a citizen of New York and is listed as the on-paper owner of NK Reliable Ortho.

15.    Defendant NK Reliable Ortho is a New York corporation with its principal place of business in Harrison, New York.  NK Reliable Ortho was incorporated on February 14, 2023, and is owned on paper and purportedly operated and controlled by N. Komisar. In actuality, one of the John Doe Defendants, John Doe Defendant 1, who is not presently identifiable to Liberty Mutual (hereinafter, the "Secret Owner") secretly owns, controls, and profits from NK Reliable Ortho and, with the aid of N. Komisar, used NK Reliable Ortho as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

16.    Defendant Vi. Reshylov resides in and is a citizen of New York and is listed as the on-paper owner of VR Ortho.

17.    Defendant VR Ortho is a New York corporation with its principal place of business at 584 Mayfair Drive South, 2nd Floor, Brooklyn, New York (the "Mayfair Drive Address"). VR Ortho was incorporated on February 14, 2023, and is owned on paper and purportedly operated and controlled by Vi. Reshylov. In actuality, the Secret Owner owns, controls, and profits from VR Ortho and, with the aid of Vi. Reshylov, used VR Ortho as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

18.    Defendant Vo. Reshylov resides in and is a citizen of New York and is listed as the on-paper owner of Akiva Ortho and Concept Line.

19.    Defendant Akiva Ortho is a New York corporation with its principal place of business in Brooklyn, New York at the Mayfair Drive Address. Akiva Ortho was incorporated on October 11, 2022, and is owned on paper and purportedly operated and controlled by Vo. Reshylov. In actuality, the Secret Owner owns, controls, and profits from Akiva Ortho and, with the aid of Vo. Reshylov, used Akiva Ortho as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

20.    Defendant Concept Line is a New York corporation with its principal place of business in Brooklyn, New York at the Mayfair Drive Address. Concept Line was incorporated on September 17, 2023, and is owned on paper and purportedly operated and controlled by Vo. Reshylov. In actuality, the Secret Owner owns, controls, and profits from Concept Line and, with the aid of Vo. Reshylov, used Concept Line as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

21.    Defendant Z. Reshylova resides in and is a citizen of New York and is listed as the on-paper owner of Biometric Sign and Skyline BK.

22.    Defendant Biometric Sign is a New York corporation with its principal place of business in Brooklyn, New York at the Mayfair Drive Address. Biometric Sign was incorporated on July 29, 2023, and is owned on paper and purportedly operated and controlled by Z. Reshylova. In actuality, the Secret Owner owns, controls, and profits from Biometric Sign and, with the aid of Z. Reshylova, used Biometric Sign as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

23.    Defendant Skyline BK is a New York corporation with its principal place of business in Brooklyn, New York at the Mayfair Drive Address. Skyline BK was incorporated on

February 8, 2023, and is owned on paper and purportedly operated and controlled by Z. Reshylova. In actuality, the Secret Owner owns, controls, and profits from Skyline BK and, with the aid of Z. Reshylova, used Skyline BK as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

24.     Defendant N. Savchyna resides in and is a citizen of New York and is listed as the on-paper owner of MB Century.

25.     Defendant MB Century is a New York corporation with its principal place of business in Brooklyn, New York.  MB Century was incorporated on November 13, 2023, and is owned on paper and purportedly operated and controlled by N. Savchyna. In actuality, the Secret Owner owns, controls, and profits from MB Century and, with the aid of N. Savchyna, used MB Century as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

26.     Defendant V. Savchyn resides in and is a citizen of New York and is listed as the on-paper owner of Global Versus and Topaz V.

27.     Defendant Global Versus is a New York corporation with its principal place of business at 2160 East 17th Street, #2F, Brooklyn, New York (the "East 17th Street Address"). Global Versus was incorporated on June 12, 2023, and is owned on paper and purportedly operated and controlled by V. Savchyn. In actuality, the Secret Owner owns, controls, and profits from Global Versus and, with the aid of V. Savchyn, used Global Versus as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

28.     Defendant Topaz V is a New York corporation with its principal place of business at the East 17th Street Address.  Topaz V was incorporated on April 28, 2023, and is owned on paper and purportedly operated and controlled by V. Savchyn. In actuality, the Secret Owner owns,

controls, and profits from Topaz V and, with the aid of V. Savchyn, used Topaz V as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

29.    Defendant M. Sporykhin resides in and is a citizen of Florida and is listed as the on-paper owner of HN DME Ortho and Rambam Ortho.

30.    Defendant HN DME Ortho is a New York corporation with its principal place of business at 100 Duffy Ave., 5th Floor, Hicksville, New York (the "Duffy Ave. Address"). HN DME Ortho was incorporated on May 12, 2022, and is owned on paper and purportedly operated and controlled by M. Sporykhin. In actuality, the Secret Owner owns, controls, and profits from HN DME Ortho and, with the aid of M. Sporykhin, used HN DME Ortho as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

31.    Defendant Rambam Ortho is a New York corporation with its principal place of business at the Duffy Ave. Address. Rambam Ortho was incorporated on April 13, 2022, and is owned on paper and purportedly operated and controlled by M. Sporykhin. In actuality, the Secret Owner owns, controls, and profits from Rambam Ortho and, with the aid of M. Sporykhin, used Rambam Ortho as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

32.    Defendant V. Sporykhina resides in and is a citizen of Florida and is listed as the on-paper owner of BH Ortho and Hatzalah OS.

33.    Defendant BH Ortho is a New York corporation with its principal place of business the Duffy Ave. Address. BH Ortho was incorporated on June 14, 2022, and is owned on paper and purportedly operated and controlled by V. Sporykhina. In actuality, the Secret Owner owns, controls, and profits from BH Ortho and, with the aid of V. Sporykhina, used BH Ortho as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

34.     Defendant Hatzalah OS is a New York corporation with its principal place of business at the Duffy Ave. Address.  Hatzalah OS was incorporated on December 28, 2022, and is owned on paper and purportedly operated and controlled by V. Sporykhina. In actuality, the Secret Owner owns, controls, and profits from Hatzalah OS and, with the aid of V. Sporykhina, used Hatzalah OS as a vehicle to submit fraudulent billing to Liberty Mutual and other New York automobile insurers.

## JURISDICTION AND VENUE

35.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

36.     Pursuant to 28 U.S.C. § 1331, this Court also has jurisdiction over the claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ["RICO"] Act) because they arise under the laws of the United States.  In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

37.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Eastern District of New York is the District where a substantial amount of the activities forming the basis of the Complaint occurred, and where one or more of the Defendants reside.

## ALLEGATIONS COMMON TO ALL CLAIMS

38.     Liberty Mutual underwrites automobile insurance in the State of New York.

I.      **An Overview of the Pertinent Laws**

        A.      **Pertinent Laws Governing No-Fault Insurance Reimbursement**

39.     New York's "No-Fault" laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay for and receive the healthcare services that they need.

40.     Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law §§ 5101, et seq.) and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. §§ 65, et seq.) (collectively referred to as the "No-Fault Laws"), automobile insurers are required to provide Personal Injury Protection Benefits ("No-Fault Benefits") to Insureds.

41.     In New York, No-Fault Benefits include up to $50,000.00 per Insured for medically necessary expenses that are incurred for healthcare goods and services, including goods for DME and OD. See N.Y. Ins. Law § 5102(a).

42.     In New York, claims for No-Fault Benefits are governed by the New York Workers' Compensation Fee Schedule (the "New York Fee Schedule").

43.     Pursuant to the No-Fault Laws, healthcare service providers are not eligible to bill for or to collect No-Fault Benefits if they fail to meet any New York State or local licensing requirements necessary to provide the underlying services.

44.     For instance, the implementing regulation adopted by the Superintendent of Insurance, 11 N.Y.C.R.R. § 65-3.16(a)(12) states, in pertinent part, as follows:

> A provider of healthcare services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed.

(Emphasis added).

45.     In State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320 (2005), the New York Court of Appeals confirmed that healthcare service providers that fail to comply with licensing

requirements are ineligible to collect No-Fault Benefits, and that insurers may look beyond a facially-valid license to determine whether there was a failure to abide by state and local law.

46.     Title 20 of the City of New York Administrative Code imposes licensing requirements on healthcare providers located within the City of New York which engage in a business which substantially involves the selling, renting, repairing, or adjusting of products for the disabled, which includes DME and OD.

47.     Specifically, New York City's Administrative Code requires DME/OD suppliers to obtain a Dealer in Products for the Disabled License ("Dealer in Products License") issued by the New York City Department of Consumer and Worker Protection, formerly Department of Consumer Affairs, ("DCWP") in order to lawfully provide DME or OD to the disabled, which is defined as "a person who has a physical or medical impairment resulting from anatomical or physiological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques". See 6 RCNY § 2-271; NYC Admin. Code §20-425.

48.     It is unlawful for any DME/OD supplier to engage in the selling, renting, fitting, or adjusting of products for the disabled within the City of New York without a Dealer in Products License.  See NYC Admin. Code §20-426.

49.     A Dealer in Products License is obtained by filing a license application with the DCWP. The application requires that the applicant identify, among other pertinent information, the commercial address of where the DME/OD supplier is physically operating from.

50.     The license application for a Dealer in Products License also requires the applicant to affirm that they are authorized to complete and submit the application on behalf of the corporate entity seeking a license and that the information contained in the application is true, correct, and

complete. The affirmation to the application requires a signature that is made under penalty for false statements under Sections 175.30, 175.35, and 210.45 of New York's Penal Law.

51.     New York law also prohibits licensed healthcare services providers, including chiropractors and physicians, from paying or accepting kickbacks in exchange for referrals for DME or OD. See, e.g., N.Y. Educ. Law §§ 6509-a, 6530(18), 6531; 8 N.Y.C.R.R. § 29.1(b)(3).

52.     Prohibited kickbacks include more than simple payment of a specific monetary amount, it includes "exercising undue influence on the patient, including the promotion of the sale of services, goods, appliances, or drugs in such manner as to exploit the patient for the financial gain of the licensee or of a third party." See N.Y. Educ. Law §§ 6509-a, 6530(17); 8 N.Y.C.R.R. § 29.1(b)(2).

53.     Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for medically necessary goods and services, using the claim form required by the New York State Department of Insurance (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or, more commonly, as an "NF-3").

54.     In the alternative, a healthcare service provider may submit claims using the Healthcare Financing Administration insurance claim form (known as the "HCFA-1500" or "CMS-1500 form").

55.     Pursuant to Section 403 of the New York State Insurance Law, the NF-3 Forms submitted by healthcare service providers to Liberty Mutual, and to all other insurers, must be verified subject to the following warning:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

56.     Similarly, all HCFA-1500 (CMS-1500) forms submitted by a healthcare service provider to Liberty Mutual, and to all other automobile insurers, must be verified by the healthcare service provider subject to the following warning:

> Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties.

**B.      Pertinent Regulations Governing No-Fault Benefits for DME and OD**

57.     Under the No-Fault Laws, No-Fault Benefits can be used to reimburse medically necessary DME or OD that was provided pursuant to a lawful prescription from a licensed healthcare provider. See N.Y. Ins. Law § 5102(a). By extension, DME or OD that was provided without a prescription, pursuant to an unlawful prescription, or pursuant to a prescription from a layperson or individual not lawfully licensed to provide prescriptions, is not reimbursable under No-Fault.

58.     DME generally consists of items that can withstand repeated use, and primarily consists of items used for medical purposes by individuals in their homes. For example, DME can include items such as bed boards, cervical pillows, orthopedic mattresses, infrared heat lamps, lumbar cushions, orthopedic car seats, cervical traction units, and whirlpool baths.

59.     OD consists of instruments that are applied to the human body to align, support, or correct deformities, or to improve the movement of joints, spine, or limbs. These devices come in direct contact with the outside of the body, and include such items as cervical collars, lumbar supports, knee supports, ankle supports, wrist braces, and the like.

60.     To ensure that Insureds' $50,000.00 in maximum No-Fault Benefits are not artificially depleted by inflated DME or OD charges, the maximum charges that may be submitted by healthcare providers for DME and OD are set forth in the New York Fee Schedule.

61.     In a June 16, 2004 Opinion Letter entitled "No-Fault Fees for Durable Medical Equipment", the New York State Insurance Department recognized the harm inflicted on Insureds by inflated DME and OD charges:

> [A]n injured person, with a finite amount of No-Fault benefits available, having assigned his rights to a provider in good faith, would have DME items of inflated fees constituting a disproportionate share of benefits, be deducted from the amount of the person's No-Fault benefits, resulting in less benefits available for other necessary health related services that are based upon reasonable fees.

62.     As it relates to DME and OD, the New York Fee Schedule sets forth the maximum charges as follows:

(a)     The maximum permissible charge for the purchase of durable medical equipment… and orthotic [devices] . . . shall be the fee payable for such equipment or supplies under the New York State Medicaid program at the time such equipment and supplies are provided . . . if the New York State Medicaid program has not established a fee payable for the specific item, then the fee payable, shall be the lesser of:

(1) the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts, or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or

(2) the usual and customary price charged to the general public.

See 12 N.Y.C.R.R. § 442.2 (2021).

63.     As indicated by the New York Fee Schedule, up to April 4, 2022, payment for DME or OD is directly related to the fee schedule set forth by the New York State Medicaid program ("Medicaid").

64.     According to the New York Fee Schedule, in instances where Medicaid has established a fee payable ("Fee Schedule item"), the maximum permissible charge for DME or OD is the fee payable for the item set forth in Medicaid's fee schedule ("Medicaid Fee Schedule").

65.     For Fee-Schedule items, Palmetto GBA, LLC ("Palmetto"), a contractor for the Center for Medicare & Medicaid Services ("CMS"), was tasked with analyzing and assigning

HCPCS Codes that should be used by DME and OD companies to seek reimbursement for – among other things – Fee Schedule items. The HCPCS Codes and their definitions provide specific characteristics and requirements that an item of DME or OD must meet in order to qualify for reimbursement under a specific HCPCS Code.

66.     The Medicaid Fee Schedule is based upon fees established by Medicaid for HCPCS Codes promulgated by Palmetto.

67.     Where a specific DME or OD does not have a fee payable in the Medicaid Fee Schedule ("Non-Fee Schedule item") then the fee payable by an insurer such as Liberty Mutual to the provider shall be the lesser of: (i) 150% of the acquisition cost to the provider; or (ii) the usual and customary price charged to the general public.

68.     For Non-Fee Schedule items, the New York State Insurance Department recognized that a provider's acquisition cost must be limited to costs incurred by a provider in a "bona fide arms-length transaction" because "[t]o hold otherwise would turn the No-Fault reparations system on its head if the provision for DME permitted reimbursement for 150% of any documented cost that was the result of an improper or collusive arrangement." See New York State Insurance Department, No-Fault Fees for Durable Medical Equipment, June 16, 2004 Opinion Letter.

69.     To the extent that bills for No-Fault Benefits are for Non-Fee Schedule items that are identified by HCPCS Codes, the definitions for set forth by Palmetto control to determine whether an item of DME or OD qualify for reimbursement under a specific HCPCS Code.

70.     Additionally, many HCPCS Codes relate to OD that has either been prefabricated, custom-fitted and/or customized. Palmetto published a guide to differentiating between custom-fitted items and off-the-shelf, prefabricated items, entitled, Correct Coding – Definitions Used for

<u>Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces) – Revised</u>. As part of its coding guide, Palmetto has identified who is qualified to properly provide custom-fitted OD.

71.     In an effort to reduce the blatant fraud committed against insurers for abusive charges relating to DME, the New York State Workers' Compensation Board replaced the New York State Medicaid Program's Durable Medical Equipment Fee Schedule with a new New York State Workers' Compensation Durable Medical Equipment Fee Schedule ("WC DME Fee Schedule") that became effective on April 4, 2022.

72.     Among other things, the WC DME Fee Schedule limited the reimbursement rates of certain previously abused DME charges. The changes made for the reimbursement for DME by the New York State Workers' Compensation Board are reflected in 12 N.Y.C.R.R. 442.2 (2022).

73.     Accordingly, when a healthcare provider submits a bill to collect charges from an insurer for DME or OD using either a NF-3 or HCFA-1500 form, the provider represents – among other things – that:

(i)     The provider is in compliance with all significant statutory and regulatory requirements;

(ii)    The provider received a legitimate prescription for reasonable and medically necessary DME from a healthcare practitioner that is licensed to issue such prescriptions;

(iii)   The prescription for DME or OD is not based any unlawful financial arrangement;

(iv)    The DME or OD identified in the bill was actually provided to the patient based upon a legitimate prescription identifying medically necessary item(s);

(v)     The HCPCS Code identified in the bill actually represents the DME or OD that was provided to the patient; and

(vi)    The fee sought for DME or OD provided to an Insured was not in excess of the price contained in the applicable DME Fee Schedule (Medicaid Fee Schedule or WC DME Fee Schedule) or the standard used for a Non-Fee Schedule item.

II.      **The Defendants' Fraudulent Scheme**

A.      **The DME Providers' Common Secret Ownership**

74.      The John Doe Defendants conspired with the Paper Owner Defendants to implement a complex fraudulent scheme in which the DME Providers were used consecutively and in conjunction with one another over the course of several years to bill Liberty Mutual and other New York automobile insurers for millions of dollars in No-Fault Benefits to which they were never entitled to receive.

75.      While each of the DME Providers were formed and listed as being owned by one of the Paper Owner Defendants, all of the DME Providers were actually controlled by the Secret Owner, who also profited from the fraudulent scheme committed against Liberty Mutual and other New York automobile-insurers.

76.      The Secret Owner was able to secretly control and profit from the DME Providers by using each of the Paper Owner Defendants as "straw" owners who would place their name on documents needed to be filed with the State of New York and City of New York to lawfully operate the DME Providers.

77.      In keeping with the fact that the Secret Owner actually owned, controlled, and profited from the DME Providers, and used the Paper Owner Defendants to further the fraudulent scheme herein, there is significant overlap in the operations of the various DME Providers that could only exist through the Secret Owner's involvement.

78.      As described above, several of the DME Providers have the same incorporation and business address: (i) HN DME Ortho and Rambam Ortho, purportedly owned by M. Sporykhin, and BH Ortho and Hatzalah OS, purportedly owned by V. Sporykhina, all purport to operate from the Duffy Ave. Address; and (ii) VR Ortho, purportedly owned by Vi. Reshylov, Akiva Ortho and

Concept Line, purportedly owned by Vo. Reshylov, and Biometric Sign and Skyline BK, purportedly by Z. Reshylova, all purportedly operate from the Mayfair Drive Address.

79.    In addition, the same phone number, 929-453-6768, which according to a background search is associated with M. Sporykhin, was used by the following DME Providers as the contact phone number on their applications for a Dealer in Products License filed with the City of New York, despite purportedly having different owners and business addresses: (i) HN DME Ortho and Rambam Ortho, purportedly owned by M. Sporykhin; (ii) Hatzalah OS, purportedly owned by V. Sporykhina; (iii) VR Ortho, purportedly owned by Vi. Reshylov; and (iv) Biometric Sign and Skyline BK, purportedly owned by Z. Reshylova.

80.    This same phone number, 929-453-6768, was also used by the following DME Providers on their delivery receipts, despite purportedly having different owners and business addresses: (i) HN DME Ortho and Rambam Ortho, purportedly owned by M. Sporykhin; (ii) NK Reliable Ortho, purportedly owned by N. Komisar; (iii) VR Ortho, purportedly owned by Vi. Reshylov; (iv) Akiva Ortho, purportedly owned by Vo. Reshylov; and (v) Skyline BK, purportedly owned by Z. Reshylova. For example:

| **DME Provider** | **Paper Owner** | **Sample Delivery Receipt Using (929) 453-6768** |
|---|---|---|
| Akiva Ortho | Vo. Reshylov | **AKIVA ORTHO SUPPLY, LLC**<br>584 Mayfair Drive South, Brooklyn NY 11234<br>Tel: (929) 453-6768<br><br>**DELIVERY RECEIPT** |
| HN DME Ortho | M. Sporykhin | HN DME ORTHO SUPPLY, Inc<br>100 Duffy Ave Hicksville, NY 11801<br>Phone: (929) 453-6768<br>Delivery Slip |

| NK Reliable Ortho | N. Komisar | **NK RELIABLE ORTHO SUPPLY, INC**<br>600 Mamaroneck Ave Ste 400, Harrison, NY 10528<br>Tel: (929) 453-6768<br><br>**DELIVERY RECEIPT** |
|---|---|---|
| Rambam Ortho | M. Sporykhin | **Rambam Ortho Supply Inc**<br>100 Duffy Avenue, Hicksville, NY 11801<br>Phone: (929) 453-6768<br>Delivery Slip |
| Skyline BK | Z. Reshylova | **SKYLINE BK, INC**<br>584 Mayfair Drive South, Brooklyn, NY 11234<br>Phone: (929) 453-6768<br>Delivery Slip |
| VR Ortho | Vi. Reshylov | **VR ORTHO INC**<br>584 Mayfair Drive South, Brooklyn NY 11234<br>Tel: (929) 453-6768<br><br>**DELIVERY RECEIPT** |

81.     Similarly, the phone number 929-842-7565, which according to a background search is associated with Vo. Reshylov, was used by the following DME Providers on their delivery receipts, despite purportedly having different owners and business addresses: (i) Global Versus and Topaz V, purportedly owned by V. Savchyn; and (ii) Akiva Ortho and Concept Line, purportedly owned by Vo. Reshylov.  For example:

| **DME Provider** | **Paper Owner** | **Sample Delivery Receipt Using (929) 842-7565** |
|---|---|---|
| Akiva Ortho | Vo. Reshylov | **AKIVA ORTHO SUPPLY, LLC**<br>584 MAYFAIR DR SOUTH, BROOKLYN, NY, 11234<br>Tel: +1-929-842-7565<br><br>**DELIVERY RECEIPT** |

| | | |
|---|---|---|
| Concept Line | Vo. Reshylov | Concept line inc<br>Address: 584 Mayfair Drive South, Brooklyn, NY<br>Phone: (929) 842-7565<br>Delivery Slip |
| Global Versus | V. Savchyn | Global versus inc<br>Address: 1701 Avenue P, Brooklyn, NY 11229<br>Phone: (929) 842-7565<br>Delivery Slip |
| Topaz V | V. Savchyn | TOPAZ V,INC<br>Address: 2160 East 17th Street, Brooklyn, NY<br>Phone: (929) 842-7565<br>Delivery Slip |

82.     Further, the phone number, 929-842-7568, which according to a background search is associated with Mariia Reshylova, Vo. Reshylova's wife, was used by the following DME Providers on their delivery receipts, despite purportedly having different owners and business addresses: (i) Biometric Sign, purportedly owned by Z. Reshylova; and (ii) MB Century, purportedly owned by N. Savchyna.  For example:

| DME Provider | Paper Owner | Sample Delivery Receipt Using (929) 842-7568 |
|---|---|---|
| Biometric Sign | Z. Reshylova | BIOMETRIC SIGN INC<br>Address: 584 MAYFAIR DR 5 2 FLOOR BROOKLYN, NY, 11234<br>Phone: (929) 842-7568<br>Delivery Slip |

| MB Century | N. Savchyna | **MB CENTURY INC**<br>Address: 113 Abbey Ct floor 2, Brooklyn, NY<br>Phone: (929) 842-7568<br><br>Delivery Slip |
|---|---|---|

83.     The use of these addresses and phone numbers by seemingly separate entities would not be possible without the Secret Owner and the Defendants' active participation in a common scheme.

84.     In addition to sharing addresses and phone numbers, as part of the common scheme involving the Secret Owner, the DME Providers each received medically unnecessary prescriptions for Fraudulent Equipment that were issued according to predetermined treatment protocols.

85.     As discussed further below, these prescriptions were routed directly to the DME Providers, who then purported to bill Liberty Mutual and other New York insurers for specific types of Fraudulent Equipment in an effort to limit the amounts of billing submitted by any one DME Provider and mask the common scheme.

86.     For example, a single prescription purportedly issued by a Referring Provider for both an "Orthopedic car seat" and "Trans elec jt Stim Dev Sys" would be divided between the Defendants, resulting in Topaz V billing Liberty Mutual for purportedly providing the TESJD Device using HCPCS Code E0762 for $808.25 and Global Versus purportedly providing the "car seat" using HCPCS Code T5001 for $756.03.

87.     As a result of this allocating of prescriptions, each of the following DME Providers billed Liberty Mutual almost exclusively for purportedly providing osteogenesis bone stimulators to Insureds using HCPCS Code E0747 with a charge of $3,300.00 per unit: (i) Rambam Ortho; (ii)

HN DME Ortho; (iii) Skyline BK; (iv) NK Reliable Ortho; (v) Biometric Sign; and (vi) MB Century.

88.     The Secret Owner, together with the Paper Owner Defendants, operated these DME Providers in overlapping and sequential fashion in an effort to limit the amount of billing submitted to insurers from any one of the DME Providers for osteogenesis bone stimulators using HCPCS Code E0747 and to mask the common fraudulent scheme:

| Entity | On-Paper Owner | First Date of Service Billed to Liberty Mutual | Last Date of Service Billed to Liberty Mutual |
|---|---|---|---|
| Rambam Ortho | M. Sporykhin | May 11, 2022 | January 5, 2023 |
| HN DME Ortho | M. Sporykhin | September 5, 2022 | March 2, 2023 |
| Skyline BK | Z. Reshylova | March 8, 2023 | July 27, 2023 |
| NK Reliable Ortho | N. Komisar | March 14, 2023 | August 5, 2023 |
| Biometric Sign | Z. Reshylova | August 2, 2023 | November 10, 2023 |
| MB Century | N. Savshyna | November 21, 2023 | Actively billing Liberty Mutual |

89.     Despite purportedly having different Paper Owners, and in further support of the fact that the Secret Owner controlled the DME Providers, the prescription forms used by Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, and Biometric Sign were virtually identical, with only the DME Provider changed at the top of the prescription form.  For example:

<div style="border:1px solid black; text-align:center;">

**Sample Common Prescription Forms for Wearable PEMF Devices**

</div>

## RAMBAM ORTHO SUPPLY

**Patient Information**
Patient Name:
Address:
City: _____ State: _____ Zip: _____
Phone Number: _____ DOB: _____
Diagnosis Codes/ICD-10: _____
Surgery Date: _____ Side (Please Circle) Right Left

☑ Wearable PEMF Device – E0747 – NU (WC/PI/VA/Private/MVA)

PEMF is a wearable noninvasive PEMF (Pulsed Electromagnetic Field) Device intended to relieve pain anywhere on the body, safely and effectively without risks of addiction or harmful side effects. PEMF offers a cost-effective treatment option as it is a one-time purchase with no need to purchase batteries or electrodes. PEMF regulates the electrical field of damaged or injured tissue which allows ineffective cells to return to normal function.

**Insurance Information**
☐ Private Insurance
☐ WC
☐ Personal Injury
☐ VA Community Care
☑ MVA

Insurance Carrier: _____
Insurance ID/Claim #: _____ Group #: _____
Date of Injury: _____
Name of Adjuster: _____ Adjuster PH#: _____
VA Auth#: _____ Last 4(SSN): _____

**Provider Information/Signature**
Provider Signature: _____ Date: 4/7/22
Provider Printed Name: Vyathestan Mamanos NPI: 1154095677
Provider Address: 1122 Coney Island Ave ste 207
City: Brooklyn State: NY Zip: 11230
Phone #: 347- 729- 3872

---

## HN DME ORTHO SUPPLY, Inc
100 Duffy Ave Hicksville, NY 11801
Tel: (929) 453-6768

**Patient Information**
Patient Name:
Address:
City: _____ State: _____ Zip: _____
Phone Number: _____ DOB: _____
Diagnosis Codes/ICD-10: _____
Surgery Date: _____ Side (Please Circle) Right Left

☐ Wearable PEMF Device – E0747 – NU (WC/PI/VA/Private/MVA)

PEMF is a wearable noninvasive PEMF (Pulsed Electromagnetic Field) Device intended to relieve pain anywhere on the body, safely and effectively without risks of addiction or harmful side effects. PEMF offers a cost-effective treatment option as it is a one-time purchase with no need to purchase batteries or electrodes. PEMF regulates the electrical field of damaged or injured tissue which allows ineffective cells to return to normal function.

**Insurance Information**
☐ Private Insurance
☐ WC
☐ Personal Injury
☐ VA Community Care
☑ MVA

Insurance Carrier: _____
Insurance ID/Claim #: _____ Group #: _____
Date of Injury: _____
Name of Adjuster: _____ Adjuster PH#: _____
VA Auth#: _____ Last 4(SSN): _____

**Provider Information/Signature**
Provider Signature: _____ Date: 12/28/22
Provider Printed Name: Shai Birel NP NPI: 1316679483
Provider Address: 5506 Ave N
City: Brooklyn State: NY Zip: 11234
Phone #: 347- 492- 3503

---

## SKYLINE BK, INC
584 Mayfair Dr S 2 Floor, Brooklyn, NY, 11234
Tel: (929) 453-6768

**Patient Information**
Patient Name:
Address:
City: _____ State: _____ Zip: _____
Phone Number: _____ DOB: _____
Diagnosis Codes/ICD-10: _____
Surgery Date: _____ Side (Please Circle) Right Left

☐ Wearable PEMF Device – NU (WC/PI/VA/Private/MV A)
e2 – Length of Need (pr = Lifetime)

PEMF is a wearable noninvasive PEMF (Pulsed Electromagnetic Field) Device intended to relieve pain anywhere on the body, safely and effectively without risks of addiction or harmful side effects. PEMF offers a cost-effective treatment option as it is a one-time purchase with no need to purchase batteries or electrodes. PEMF regulates the electrical field of damaged or injured tissue which allows ineffective cells to return to normal function.

**Insurance Information**
☐ Private Insurance
☐ WC
☐ Personal Injury
☐ VA Community Care
☑ MVA

Insurance Carrier: _____
Insurance ID/Claim #: _____ Group #: _____
Date of Injury: _____
Name of Adjuster: _____ Adjuster PH#: _____
VA Auth#: _____ Last 4(SSN): _____

JORDAN FERSEL, MD PC
JORDAN FERSEL, MD – NPI# 1881685519

**Provider Information/Signature**
Provider Signature: Jordan S Jenk
Provider Printed Name: Jordan Fersel MD NPI: 1881685515
Provider Address: 2354 Westchester AVR
City: Bronx State: NY Zip: 10462
Phone #: ( 718 ) 684 - 4535

---

## NK RELIABLE ORTHO SUPPLY, INC
690 Mantauron Ave Ste 400, Harrison, NY 10528
Tel: (929) 453-6768

**Patient Information**
Patient Name:
Address:
City:
Phone Number:
Diagnosis Codes/ICD-10: _____
Surgery Date: _____ Side (Please Circle) Right Left

☐ Wearable PEMF Device– – NU (WC/PI/VA/Private/MVA)

PEMF is a wearable noninvasive PEMF (Pulsed Electromagnetic Field) Device intended to relieve pain anywhere on the body, safely and effectively without risks of addiction or harmful side effects. PEMF offers a cost-effective treatment option as it is a one-time purchase with no need to purchase batteries or electrodes. PEMF regulates the electrical field of damaged or injured tissue which allows ineffective cells to return to normal function.

**Insurance Information**
☐ Private Insurance
☐ WC
☐ Personal Injury
☐ VA Community Care
☐ MVA

Insurance Carrier: _____
Insurance ID/Claim #: _____ Group #: _____
Date of Injury: 02/18/23
Name of Adjuster: _____ Adjuster PH#: _____
VA Auth#: _____ Last 4(SSN): _____

**Provider Information/Signature**
Provider Signature: _____ Date: / /
Provider Printed Name: DR. CATHY DELERME-PAGAN MD NPI: 1891733713
Provider Address: 409 ROCKAWAY AVENUE, 2ND FLOOR
City: BROOKLYN State: NY Zip: 11212
Phone #: (718) 513 58 81

Biometric Sign prescription form

90.     In addition, and as part of the Defendants' common scheme, despite these DME

Providers all receiving prescriptions for a "Wearable PEMF Device", Rambam Ortho, HN DME

Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign, and MB Century all billed Liberty Mutual

for purportedly providing an "Osteogenesis Bone Stimulator" using HCPCS Code E0747, which

is a completely different item than the "Wearable PEMF Device" purportedly prescribed by the

Referring Provider, as discussed further below.

91.     Similar to the billing by the Defendants for Osteogenesis Bone Stimulators, Akiva

Ortho, VR Ortho, Global Versus, and Concept Line billed Liberty Mutual almost exclusively for

purportedly providing positioning seats for persons with special orthopedic needs to Insureds using

HCPCS Code T5001 with a charge of $756.03 per unit.

92.     In addition to these four DME Providers, Skyline BK also billed Liberty Mutual for purportedly providing positioning seats for persons with special orthopedic needs to Insureds using HCPCS Code T5001 over a two-week period.

93.     Just as with the DME Providers who billed for purportedly providing Osteogenesis Bone Stimulators, the Secret Owner, together with the Paper Owner Defendants, operated these DME Providers in sequential fashion in an effort to limit the amount of billing submitted to an insurer from any one of the DME Providers for purportedly providing this Fraudulent Equipment and to mask the common fraudulent scheme:

| **Entity** | **On-Paper Owner** | **First Date of Service Billed to Liberty Mutual** | **Last Date of Service Billed to Liberty Mutual** |
|---|---|---|---|
| Akiva Ortho | Vo. Reshylov | November 3, 2022 | February 25, 2023 |
| Skyline BK | Z. Reshylova | March 6, 2023 | March 17, 2023 |
| VR Ortho | Vi. Reshylov | March 25, 2023 | June 19, 2023 |
| Global Versus | V. Savchyn | June 25, 2023 | October 1, 2023 |
| Concept Line | Vo. Reshylov | October 31, 2023 | January 20, 2024 |

94.     In further support of the fact that the Secret Owner controlled the DME Providers, and as will be discussed further below, despite Akiva Ortho, Skyline BK, VR Ortho, Global Versus, and Concept Line all receiving prescriptions calling for an "Orthopedic car seat" or "Ortho seat", all billed Liberty Mutual for purportedly providing a "Positioning Seat For Persons with Special Orthopedic Needs" using HCPCS Code T5001, which are vehicle restraint systems designed for persons who are unable to use traditional seat belts or car seats (for children) as a result of certain medical conditions, such as cerebral palsy.

95.     Just as with the billing by the Defendants for Osteogenesis Bone Stimulators and Positioning Seats, both BH Ortho and Hatzalah OS submitted billing to Liberty Mutual for a

variety of Fraudulent Equipment, mostly consisting of custom fit orthoses, which is described in more detail below.

96.     Additionally, and in further support of the fact that the Secret Owner controlled the DME Providers, these DME Providers each billed Liberty Mutual using virtually identical HCPCS Codes in response to the prescriptions from Fraudulent Equipment they received, and the DME Providers each made virtually the same coding misrepresentations in their billing to Liberty Mutual, as will be discussed further below.

97.     Just as with the DME Providers who billed for purportedly providing Osteogenesis Bone Stimulators and Positioning Seats, the Secret Owner, together with the Paper Owner Defendants, operated these DME Providers in overlapping and sequential fashion in an effort to limit the amount of billing submitted to an insurer from any one of the DME Providers Fraudulent Equipment and to mask the common fraudulent scheme:

| **Entity** | **On-Paper Owner** | **First Date of Service Billed to Liberty Mutual** | **Last Date of Service Billed to Liberty Mutual** |
|---|---|---|---|
| BH Ortho | V. Sporykhina | June 30, 2022 | February 24, 2023 |
| Hatzalah OS | V. Sporykhina | February 6, 2023 | October 1, 2023 |

98.     Similarly, and as part of the common scheme, based on the unlawful financial arrangements between the Secret Owner, the Paper Owner Defendants, and others who presently identifiable but who are affiliated with the Clinics, the DME Providers received virtually identical prescriptions, including photocopied prescriptions, for Fraudulent Equipment from multiple Clinics in the New York metropolitan area. For example:

> (i)     Akiva Ortho, BH Ortho, Biometric Sign, Concept Line, Global Verus, Hatzalah OS, HN DME Ortho, Rambam Ortho, Skyline BK, Topaz V, and VR Ortho, each received prescriptions for Fraudulent Equipment, including virtually identical photocopied prescriptions, from the Clinic located at 1 Cross Island Plaza, Rosedale, New York ("the Cross Island Plaza Clinic");

    (ii)    Akiva Ortho, BH Ortho, NK Reliable Ortho, Skyline BK, and VR Ortho each received prescriptions for Fraudulent Equipment, including virtually identical photocopied prescriptions, from the Clinic located at 175-20 Hillside Ave., Jamaica, New York (the "Hillside Ave. Clinic");

    (iii)    Akiva Ortho, Biometric Sign, Global Versus, Hatzalah OS, HN DME Ortho, Skyline BK, Topaz V, and VR Ortho each received prescriptions for Fraudulent Equipment, including virtually identical photocopied prescriptions, from the Clinic located at 5506 Ave. N, Brooklyn, New York (the "Ave. N Clinic");

    (iv)    Akiva Ortho, Global Versus, HN DME Ortho, NK Reliable Ortho, Rambam Ortho, Skyline BK, and VR Ortho each received prescriptions for Fraudulent Equipment from the Clinic located at 62-99 99th St., Rego Park, New York (the "99th St. Clinic"); and

    (v)    MB Century and Topaz V each received prescriptions for Fraudulent Equipment from the Clinic located at 719 Southern Boulevard, Bronx, New York.

99.    These are only representative examples.

100.    In addition to the scheme involving Fraudulent Equipment, V. Savchyn and Vi. Reshylov are listed as the owners of multiple companies, including Express D Corp, Etzen Diagnostic Inc., and BHV Diagnostics Inc., all of which purport to provide the technical component to diagnostic ultrasounds allegedly performed at the Clinics, and M. Sporykhin's name was listed as the technician on multiple diagnostic ultrasound reports purportedly issued by a company known as Regal Diagnostics.

101.    Further, as part of the Paper Owner and Secret Owners' efforts to mask the Secret Owner's control of the DME Providers, Liberty Mutual attempted to verify the claims submitted by the Defendants by way of examinations under oath, but the Paper Owner Defendants intentionally refused to appear because they would be unable to answer key questions about the DME Providers' operations and their testimony would reveal the secret ownership scheme.

**B.      Overview of the Common Fraudulent Scheme**

102.     The Secret Owner, together with the Paper Owner Defendants, conceived and implemented a complex fraudulent scheme in which they used the DME Providers as vehicles to bill Liberty Mutual and other New York automobile insurers for hundreds of thousands of dollars in No-Fault Benefits which the Defendants were never entitled to receive.

103.     Through the complex multi-corporation scheme, the Secret Owner and the Paper Owner Defendants used the DME Providers to bill and collect No-Fault Benefits from Liberty Mutual and other automobile insurers that they were never entitled to collect.  Specifically, between May 2022 and present, the DME Providers have submitted more than $1,400,000.00 in fraudulent claims to Liberty Mutual, have wrongfully obtained more than $490,000.00, and there is more than $1 million in additional fraudulent claims that have yet to be adjudicated but which Defendants continue to seek payment from Liberty Mutual.

104.     The Defendants were able to perpetrate the fraudulent scheme against Liberty Mutual described below by obtaining prescriptions for Fraudulent Equipment purportedly issued by the Referring Providers because of improper agreements with third-party individuals associated with the Clinics who are not presently identifiable (the "Clinic Controllers").

105.     As part of this scheme, the Defendants obtained prescriptions for Fraudulent Equipment that were purportedly issued by various Referring Providers who purportedly treated Insureds at the various Clinics.

106.     Further, the Defendants obtained prescriptions for Fraudulent Equipment that were purportedly issued by Referring Providers during their treatment at a Clinic.

107.     None of the Defendants marketed or advertised the DME Providers to the general public, and they lacked any genuine retail or office location, and operated without any legitimate

efforts to attract patients who might need DME or healthcare practitioners who might legitimately prescribe DME.

108.     Similarly, the Paper Owner Defendants did virtually nothing that would be expected of the owner of a legitimate DME supply company to develop its reputation in the medical community or to attract patients who might need DME or healthcare practitioners who might legitimately prescribe DME.

109.     Instead, the Defendants entered illegal, collusive agreements with the Clinics, Clinic Controllers, and Referring Providers and steered them to prescribe and direct large volumes of the same prescriptions to the DME Providers for the specifically targeted Fraudulent Equipment.

110.     The Defendants received the prescriptions for Fraudulent Equipment, purportedly issued by the Referring Providers as part of the unlawful financial arrangements with the Clinic Controllers, directly from the Clinics and without going through the Insureds.  Many of these prescriptions were bogus and contained a duplicated signature of the Referring Provider who purportedly issued the prescription.

111.     By submitting bills to Liberty Mutual seeking No-Fault Benefits for Fraudulent Equipment based upon specific HCPCS Codes, the Defendants indicated that they provided Insureds with the particular item associated with each unique HCPCS Code, and that such specific item was medically necessary as determined by a Referring Provider, who was licensed to prescribe DME and/or OD.

112.     However, the Defendants tried to maximize the amount of No-Fault Benefits that they could obtain from Liberty Mutual, and other automobile insurers, by submitting bills to Liberty Mutual for Fraudulent Equipment that was never actually provided to Insureds by misrepresenting the HCPCS Codes identified in the bills submitted to Liberty Mutual by the Defendants.

113.    In a substantial majority of the charges for Fee Schedule items identified in Exhibits "1" through "13" – to the extent that any Fraudulent Equipment was actually provided to the Insureds – the Fraudulent Equipment did not match the HCPCS Codes identified in the bills submitted to Liberty Mutual by the Defendants.

114.    Based on the false and medically unnecessary prescriptions, each of the Defendants engaged in a virtually identical pattern of submitting bills to Liberty Mutual, and other automobile insurers, seeking No-Fault Benefits based on HCPCS Codes that did not accurately represent – sometimes in any way – the Fraudulent Equipment purportedly provided to the Insureds in order to obtain higher reimbursement rates than what was permissible.

115.    Instead, the Fee Schedule items actually provided to Insureds – and again to the extent that any Fraudulent Equipment was actually provided – would qualify under different HCPCS Codes that had significantly lower maximum reimbursement rates than the HCPCS Codes identified in the bills submitted by the Defendants.

**C.    Defendants Failure to Comply with Local Licensing Provisions**

116.    As stated above, for a DME/OD supplier to provide DME or OD to patients within the City of New York, the DME/OD supplier must obtain a Dealer in Products License by the DCWP.

117.    For the Defendants to lawfully provide DME/OD to the Insureds identified in Exhibits "1" through "13", the DME Providers were required to obtain a Dealer in Products License because an overwhelming majority of the Insureds identified in Exhibits "1" through "13" were located within the City of New York.

118.    As part of the Defendants scheme to defraud Liberty Mutual and other Insurers, the Defendants sought Dealer in Products Licenses from the DCWP in an effort to have almost all of the DME Providers appear to be legitimate.

119.   However, each of the DME Providers were not eligible to collect No-Fault Benefits from Liberty Mutual, and other automobile insurers, because they were never lawfully licensed by the DCWP to provide DME or OD to Insureds.

120.   Each of the DME Providers were not lawfully licensed by the DCWP because they obtained Dealer in Products licenses through fraud and/or misrepresentations.

121.   As part of obtaining a Dealer in Products License, each of the DME Providers completed a license application form that required it to identify – among other things – the commercial address of where each DME Provider physically operated from.

122.   Each Dealer in Products License application contains an affirmation to be signed with a penalty for false statements under Section 175.35 of New York's Penal Law.

123.   However, and in support of the fact that the Defendants participated in a common scheme to defraud Liberty Mutual and other automobile insurers of No-Fault Benefits, the Paper Owner Defendants each knowingly provided false information in their Dealer in Products License applications filed on behalf of the DME Providers.

124.   Specifically, the following Paper Owners each falsely affirmed that the DME Providers operated from the Duffy Ave. Address knowing that the following entities did not actually operate or conduct any business from that address: (i) M. Sporykhin falsely affirmed that HN DME Ortho and Rambam Ortho operated out of the Duffy Ave Address; and (ii) V. Sporykhina falsely affirmed that BH Ortho and Hatzalah OS operated out of the Duffy Ave. Address.

125.   In addition, the following Paper Owners each falsely affirmed that the DME Providers operated from Mayfair Drive Address knowing that the following entities did not actually operate or conduct any business from that address: (i) Vi. Reshylov falsely affirmed that VR Ortho operated out of the Mayfair Drive Address; (ii) Vo. Reshylov falsely affirmed that Akiva

Ortho and Concept Line operated out of the Mayfair Drive Address; and (iii) VZ. Reshylova falsely affirmed that Biometric Sign and Skyline BK operated out of the Mayfair Drive Address.

126.   Further, V. Savchyn falsely affirmed that Global Versus and Topaz V operated from the East 17th Street Address, knowing that Global Versus and Topaz V did not actually operate or conduct any business from that address.

127.   Finally, N. Komisar falsely affirmed that NK Reliable Ortho operated from 600 Mamaroneck Ave, Ste. 400, Harrison, New York (the "Mamaroneck Ave. Address"), and N. Savchyna falsely affirmed that MB Century operated from 113 Abbey Ct #2, Brooklyn, New York (the "Abbey Ct. Address"), knowing that NK Reliable Ortho and MB Century did not actually operate or conduct any business from those addresses.

128.   In support of the fact that the Dealer in Products license applications contained false affirmations, Liberty Mutual investigators visited the Mayfair Drive Address and observed this address is a private residence, with a sign on the mailbox for "2 Fl" bearing the name "Reshylov". There was otherwise no signage or any other indication that any of the DME Providers operate from this location.

129.   Similarly, the East 17th Street Address purportedly utilized by Global Versus and Topaz V, and the Abbey Ct. Address purportedly utilized by MB Century are private apartments located in residential buildings.

130.   Liberty Mutual investigators visited the Duffy Ave. Address to verify the address of BH Ortho and observed it is the location of a Regus Office virtual office space.  The Liberty Mutual investigator spoke with a representative of Regus who advised that BH Ortho has a folder where incoming mail is held, otherwise there is no equipment stored at this location nor any large deliveries made addressed to BH Ortho, and there would be nowhere at the Duffy Ave. Address for BH Ortho to store equipment even if they wanted to.

131.    Similarly, the Mamaroneck Ave. Address purportedly utilized by NK Reliable Ortho is the location of a Carr Workplaces virtual office location.

132.    In further support of the fact that the DME Providers were not lawfully licensed by the DCWP because they obtained Dealer in Products licenses under false pretenses, each of the Paper Owners affirmed on their license applications, under penalty for false statements, that they were the sole owner of each respective DME Provider.

133.    In reality, as set forth above, the DME Providers were actually controlled by the Secret Owner, and who directly profited from the fraudulent scheme committed through the DME Providers.

134.    The Paper Owners knowingly provided false information regarding their business addresses and ownership to induce the DCWP to issue licenses to them, which would give the Defendants the appearance of legitimacy and provide them with the opportunity to submit fraudulent billing to Liberty Mutual and other Insurers through the DME Providers.

135.    Accordingly, Defendants were never entitled to receive No-Fault Benefits because they failed to comply with all significant statutory and regulatory requirements by operating as a DME/OD supplier within the City of New York without a valid Dealer in Products License.

136.    In each of the claims identified in Exhibits "1" through "13" the Defendants fraudulently misrepresented that they were properly licensed with all local statutory and regulatory requirements and were lawfully permitted to provide DME/OD to Insureds when the Defendants were never eligible to collect No-Fault Benefits in the first instance because the DME Providers did not lawfully obtain Dealer in Products Licenses as they received their Dealer in Products licenses under the false pretenses described above.

**D.      The Defendants' Unlawful Financial Arrangements**

137.    To obtain access to Insureds as part of their fraudulent scheme and maximize the No-Fault Benefits the Defendants could obtain from Liberty Mutual and other New York automobile insurers, the Defendants entered into unlawful financial agreements with others who are not presently identifiable but who are associated with the Clinics where prescriptions for Fraudulent Equipment were provided to the Defendants in exchange for financial consideration.

138.    Since the inception of the fraudulent scheme, the Defendants engaged in unlawful financial arrangements with the Clinic Controllers to obtain prescriptions for Fraudulent Equipment. These schemes allowed the Defendants to submit thousands of claims for Fraudulent Equipment to Liberty Mutual and other New York automobile insurers in New York.

139.    As part of the unlawful financial arrangements, the Defendants would pay others who are not presently identifiable, including fictitious businesses, to obtain prescriptions for Fraudulent Equipment purportedly issued by the Referring Providers at the Clinics.

140.    The Defendants were able to enter unlawful financial arrangement schemes with the Clinic Controllers in order to obtain prescriptions purportedly issued by the Referring Providers because the Referring Providers operated at Clinics that are actually organized as "one-stop" shops for no-fault insurance fraud.

141.    These Clinics provide facilities for the Referring Providers, as well as a "revolving door" of medical professional corporations, all geared towards exploiting New York's no-fault insurance system.

142.    In fact, Liberty Mutual has received billing from an ever-changing number of fraudulent healthcare providers at a variety of different Clinics that start and stop operations without any purchase or sale of a "practice", without any legitimate transfer of patient care from one professional to another, and without any legitimate reason for the change in provider name

beyond circumventing insurance company investigations and continuing the fraudulent exploitation of New York's no-fault insurance system.

143.    Pursuant to the unlawful financial arrangements, the Defendants paid others that are not presently known who are associated with the Clinics, and who were able to direct prescriptions for Fraudulent Equipment purportedly issued by the Referring Providers to the Defendants, which the Defendants used as a basis to support their fraudulent bills to Liberty Mutual.

144.    In support of the fact that the prescriptions for Fraudulent Equipment were the result of unlawful financial arrangements, and as explained in detail below, the prescriptions were not medically necessary, were provided pursuant to predetermined fraudulent protocols that provided Insureds with predetermined sets of virtually identical Fraudulent Equipment, and frequently never actually issued by the Referring Provider.

145.    Based on these unlawful financial arrangements, each of the DME Providers received prescriptions from the Clinics that contained photocopied signatures of the Referring Provider.

146.    For example, the Defendants received multiple sets of photocopied prescriptions from the Cross Island Plaza Clinic for Fraudulent Equipment purportedly issued by Referring Providers Idy Liang, N.P., Yledede Cummings, N.P., and Elizabeth Lafargue, N.P., and from the Hillside Ave. Clinic from Sonia Sikand, P.A.:

Example 1: Idy Liang, N.P.

| Received by: | Sample photocopied signatures |
|---|---|
| Akiva Ortho |  |

| Skyline BK | PROVIDER SIGNATURE:<br><br>IDY LIANG<br>DATE: 01/30/23 |
| Global Versus | PROVIDER SIGNATURE:<br><br>Idy Liang, NP<br>DATE: 03/01/23 |
| VR Ortho | PROVIDER SIGNATURE:<br><br>Idy Liang, NP<br>DATE: 05/17/23 |

Example 2: Idy Liang, N.P.

| **Received by:** | **Sample photocopied signature** |
| --- | --- |
| BH Ortho | Physician's Signature      Date: 11/00/22 |
| Hatzalah OS | Physician's Signature      Date: 01/30/23 |

Example 3: Yledede Cummings, N.P.

| **Received by:** | **Sample photocopied signature** |
| --- | --- |
| Biometric Sign | Physician's Signature      Date: 08/14/23 |

| | | |
|---|---|---|
| Concept Line | Physician's Signature _____ | Date: 11/30/23 |
| Global Versus | Physician's Signature _____ | Date: 07/10/23 |
| Topaz V | Physician's Signature _____ | Date: 08.14.23 |
| VR Ortho | Physician's Signature _____ | Date: 06/05/23 |

Example 4: Elizabeth Lafargue, N.P.

| **Received by:** | **Sample photocopied signature** |
|---|---|
| Global Versus | Physician's Signature _____ Date: 06/29/26 |
| Topaz V | Physician's Signature _____ Date: 06/05/23 |
| VR Ortho | Physician's Signature _____ Date: 6/14/23 |

Example 5: Sonia Sikand, P.A.

| **Received by:** | **Sample photocopied signature** |
|---|---|

| Akiva Ortho | I confirm the order for the above-named patient . I also certify that the prescribed treatment is medically reasonable and necessary in the reference to accepted standards of medical practice within the community for treatment of this patient's condition. Physician Signature_____ DATE 10\|12\|22 |
| --- | --- |
| Skyline BK | I confirm the order for the above-named patient . I also certify that the prescribed treatment is medically reasonable and necessary in the reference to accepted standards of medical practice within the community for treatment of this patient's condition. Physician Signature_____ DATE 02/27/23 |
| VR Ortho | I confirm the order for the above-named patient . I also certify that the prescribed treatment is medically reasonable and necessary in the reference to accepted standards of medical practice within the community for treatment of this patient's condition. Physician Signature_____ DATE 5/24/23 |

Example 6: Sonia Sikand, P.A.

| **Received by:** | **Sample photocopied signature** |
| --- | --- |
| BH Ortho | Physician's Signature_____ Date: 08/03/22 |
| NK Reliable Ortho | Physician's Signature_____ Date: 11/14/22 |

147.    These are only representative examples of the photocopied prescriptions used by the Defendants as a result of their unlawful financial arrangements with the Clinics.

148.    In keeping with the fact that the Defendants obtained prescriptions for Fraudulent Equipment were not medically unnecessary and provided pursuant to predetermined fraudulent protocols and, the Defendants: (i) received virtually identical predetermined sets of prescriptions

from multiple Referring Providers operating out of the same Clinic, including virtually identical photocopied prescriptions; and (ii) obtained prescriptions for Fraudulent Equipment directly from the Clinics without any communication with or involvement by the Insureds.

149.    Furthermore, and to the extent that the Insureds received any Fraudulent Equipment, the Insureds were provided with Fraudulent Equipment directly from the Clinics, typically from the receptionists, without any involvement from the Defendants.

150.    In addition, multiple Insureds were issued prescriptions for Fraudulent Equipment on a date that the Insured was not treated by the Referring Provider who purportedly issued the prescription.

151.    In all of the claims identified in Exhibits "1" through "13", the Defendants falsely represented that Fraudulent Equipment was provided pursuant to lawful prescriptions from healthcare providers and were therefore eligible to collect No-Fault Benefits in the first instance, when the prescriptions were provided pursuant to unlawful financial arrangements.

**E.    The Prescriptions Obtained Pursuant to Predetermined Fraudulent Protocols**

152.    In addition to the Defendants' unlawful financial arrangements, pursuant to agreements with others who are not presently identifiable, the Defendants obtained prescriptions for Fraudulent Equipment purportedly issued by the Referring Providers but were issued pursuant to predetermined fraudulent protocols, which were designed to maximize the billing that the Defendants – and others – could submit to insurers, including Liberty Mutual, rather than to treat or otherwise benefit the Insureds.

153.    For example, many of the prescriptions identified in Exhibits "1" - "13" were not actually issued by the Referring Provider listed on the prescription. Instead, in those circumstances, the prescriptions were issued by others who are not presently identifiable, without the Referring Providers issuing, signing, authorizing, or even knowing about such prescriptions as these

prescriptions contained a photocopied signature or utilized a signature stamp of the Referring Provider.

154. The common fraudulent scheme involving the Defendants established that these bogus prescriptions for specific types of Fraudulent Equipment be routed directly to the DME Providers, so that they could each bill Liberty Mutual for only certain and specific types of Fraudulent Equipment, as will be discussed in more detail below:

    (i)    Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign, and MB Century each billed Liberty Mutual for purportedly providing Insureds with Osteogenesis Bone Stimulations using HCPCS Code E0747 with a charge of $3,300.00 per unit;

    (ii)    Akiva Ortho, VR Ortho, Global Versus, and Concept Line each billed Liberty Mutual for purportedly providing Insureds with Positioning Seats for Persons with Special Orthopedic Needs using HCPCS Code T5001 with a charge of $756.03 per unit;

    (iii)    BH Ortho and Hatzalah OS each billed Liberty Mutual for purportedly providing Insureds with various pieces of custom fitted DME; and

    (iv)    Topaz V billed Liberty Mutual for purportedly providing Insureds with Transcutaneous Electrical Joint Stimulation Devices ("TEJSD") using HCPCS Code E0762 with a charge of $808.25 per unit.

155. In the claims identified in Exhibits "1" through "13", virtually all of the Insureds were involved in relatively minor and low-impact "fender-bender" accidents, to the extent that they were involved in any actual accidents at all.

156. Concomitantly, almost none of the Insureds identified in Exhibits "1" through "13", whom the Referring Providers purported to treat, suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced or purported to experience.

157. In keeping with the fact that the Insureds identified in Exhibits "1" through "13" suffered only minor injuries – to the extent that they had any injuries at all – as a result of the

relatively minor accidently, many of the Insureds did not seek treatment at any hospital as a result of their accidents.

158.    To the extent that the Insureds in the claims identified in Exhibits "1" through "13" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and then sent on their way with nothing more serious than a minor soft tissue injury such as a sprain or strain.

159.    However, despite virtually all the Insureds being involved in relatively minor and low-impact accidents and only suffering from sprains and strains – to the extent that the Insureds were actually injured – virtually all of the Insureds who treated with each of the Referring Providers were subject to extremely similar treatment including nearly identical prescriptions for Fraudulent Equipment.

160.    The prescriptions for Fraudulent Equipment that were purportedly issued to the Insureds identified in Exhibits "1" through "13" were issued pursuant to predetermined fraudulent protocols set forth at each Clinic, not because the Fraudulent Equipment was medically necessary for each Insured based upon his or her individual symptoms or presentations.

161.    No legitimate physician, chiropractor, other licensed healthcare provider, or professional entity would permit prescriptions for Fraudulent Equipment to be issued based upon the fraudulent protocols described below.

162.    Virtually all of the claims identified in Exhibits "1" through "13" are based upon medically unnecessary prescriptions for predetermined sets of Fraudulent Equipment, which were purportedly issued by the Referring Providers who practiced at various Clinics across the New York metropolitan area.

163.    In a legitimate setting, when a patient injured in a motor vehicle accident seeks treatment by a healthcare provider, the patient's subjective complaints are evaluated, and the

treating provider will direct a specific course of treatment based upon the patients' individual symptoms or presentation.

164.    Furthermore, in a legitimate setting, during a patient's treatment, a healthcare provider <u>may</u> – but generally does not – prescribe DME and/or OD that should aid in the treatment of the patient's symptoms.

165.    In determining whether to prescribe DME and/or OD to a patient – in a legitimate setting – a healthcare provider should evaluate multiple factors, including: (i) whether the specific DME and/or OD could have any negative effects based upon the patient's physical condition and medical history; (ii) whether the DME and/or OD is likely to help improve the patient's complained of condition; and (iii) whether the patient is likely to use the DME and/or OD. In all circumstances, any prescribed DME and/or OD would always directly relate to each patient's individual symptoms or presentation.

166.    There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in an automobile accident.

167.    An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

168.    If a healthcare provider determines that DME and/or OD is medically necessary after considering a patient's individual circumstances and situations, in a legitimate setting, the healthcare provider would indicate in a contemporaneous medical record, such as an evaluation report, what specific DME and/or OD was prescribed, why it was medically necessary, or how it would help the Insureds.

169.    Further, in a legitimate setting, when a patient returns for an examination after being prescribed DME and/or OD, the healthcare provider would inquire – and appropriately report –

whether the previously prescribed DME and/or OD aided the patient's subjective complaints and whether there were any barriers to using the previously prescribed DME and/or OD. Such information is typically included so the healthcare provider can recommend a further course of treatment regarding the previously prescribed DME and/or OD or newly issued DME and/or OD.

170.    It is improbable – to the point of impossibility – that virtually all of the Insureds identified in Exhibits "1" through "13" who treated with at a specific Clinic would receive virtually identical prescriptions for numerous items of Fraudulent Equipment despite being different ages, in different physical conditions, and involved in different motor vehicle accidents.

171.    It is even more improbable – to the point of impossibility – that virtually all of the Insureds identified in Exhibits "1" through "13" who treated with different Referring Providers at a specific Clinic would receive virtually identical prescriptions for numerous items of Fraudulent Equipment despite being different ages, in different physical conditions, and involved in different motor vehicle accidents.

172.    In keeping with the fact that the prescriptions for Fraudulent Equipment used by the Defendants were medically unnecessary and obtained as part of a predetermined fraudulent protocol, many of the prescriptions were purportedly issued by the Referring Providers on dates that the Insureds never even treated with the Referring Providers.

173.    Moreover, to the extent that there was a contemporaneously dated evaluation report, the evaluation report virtually always failed to explain – and oftentimes failed to identify – the Fraudulent Equipment identified on the prescriptions provided to the Defendants and used by the Defendants to bill Liberty Mutual for the charges identified in Exhibits "1" through "13".

174.    In addition, the prescriptions often contained vague and generic descriptions for DME and OD, which – as explained in more detail below – provided the Defendants with the

opportunity to purportedly provide – and bill Liberty Mutual for – whatever DME or OD they wanted.

175.    Even more, and as also explained below in more detail, the charges to Liberty Mutual identified in Exhibits "1" – "13" were not based upon prescriptions for medically necessary Fraudulent Equipment because the Defendants purportedly provided Insureds with whatever DME or OD they wanted, as the Fraudulent Equipment purportedly provided by each of the DME Defendants – and billed to Liberty Mutual – was often not the item identified in the prescriptions purportedly issued by the Referring Providers.

176.    Further, the prescriptions purportedly issued by the Referring Providers were never given to the Insureds. Instead, the Insureds were often provided with Fraudulent Equipment directly from the Clinic's receptionists, without any interaction from the Defendants – to the extent that the Insureds actually received any Fraudulent Equipment – and the prescriptions were routed directly to the Defendants from the Clinics.

177.    For the reasons set forth above, and below, in each of the claims identified  in Exhibits "1" through "13", the Defendants falsely represented that Fraudulent Equipment was provided pursuant to prescriptions from healthcare providers for medically necessary DME or OD, and were therefore eligible to collect No-Fault Benefits in the first instance, when the prescriptions were for medically unnecessary Fraudulent Equipment issued pursuant to predetermined fraudulent protocols and provided to the Defendants pursuant agreements with others who are not presently identifiable.

### 1)  The Cross Island Plaza and Hillside Ave. Clinics

178.    Insureds who received treatment at the Cross Island Plaza and Hillside Ave. Clinics received prescriptions for Fraudulent Equipment based on these predetermined treatment protocols.

179.     When the Insureds sought treatment with and were purportedly treated by Referring Providers, they did not evaluate each Insured's individual symptoms or presentation to determine whether and what type of DME and/or OD to provide.

180.     Instead, regardless of the type of motor vehicle accident, the age of each patient, each patient's physical condition, each patient's subjective complaints, or whether each patient would actually use the Fraudulent Equipment, Referring Providers virtually always prescribed Fraudulent Equipment based on the protocols established at these Clinics.

181.     These protocols included the issuance of prescriptions for: (i) "Wearable PEMF Devices" or "Osteogenesis Bobe Stimulators", which were routed to Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign and MB Century; (ii) "Orthopedic car seats" or "Ortho seats", which were routed to Akiva Ortho, VR Ortho, Global Versus, Skyline BK, and Concept Line; (iii) "TEJSD Devices", which were routed to Topaz V; and (iv) "Shoulder brace", "Knee brace", "LSO brace", "TLSO", "Hip brace", and/or "Cervical traction", which were routed to BH Ortho and Hatzalah OS.

182.     These protocols included the issuance of multiple prescriptions for Fraudulent Equipment to an Insured on a single date when there was no legitimate reason to do so.

183.     For example, Insureds who treated at the Cross Island Plaza Clinic received as many as six separate prescriptions for Fraudulent Equipment on a single date, which were then routed directly to the DME Providers and others without any involvement by the Insureds.

184.     As demonstrated above, the vast majority of these prescriptions contained a photocopied signature of the Referring Provider who purportedly issued the prescription.

185.     The prescription protocol established at the Clinics allowed the Defendants to mask the breadth of their fraudulent scheme, as the bogus prescriptions were divided between each of

the DME Providers and used by the Defendants as the basis to bill to Liberty Mutual and other

New York automobile insurers.  The following examples illustrate the scheme:

(i)    On November 24, 2022, an Insured named ES was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Cross Island Plaza Clinic.  After an initial examination with Idy Liang, N.P. ("Liang") on November 30, 2022, Liang purportedly issued four separate prescriptions in the name of ES for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Orthopedic car seat | **Akiva Ortho** |
| 2 | Wearable PEMF Device | **Rambam Ortho** |
| 3 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp | Non-Defendant DME supplier |
| 4 | 6-week rental of a Sustained Acoustic Medicine ("SAM") unit | Non-Defendant DME supplier |

On January 30, 2023, after a purported follow-up examination with Liang, Liang purportedly issued the following prescription in the name of ES for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical traction<br>LSO brace<br>Knee brace – R<br>Shoulder brace – R | **Hatzalah OS** |

(ii)   On December 5, 2022, an Insured named IA was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Cross Island Plaza Clinic.  After an initial examination with Liang on December 5, 2022, Liang purportedly issued six separate prescriptions in the name of IA for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Orthopedic car seat | **Akiva Ortho** |
| 2 | Wearable PEMF Device | **Rambam Ortho** |
| 3 | Cervical collar | |

|   | Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp | Non-Defendant DME supplier |
|---|---|---|
| 4 | 6-week rental of a SAM unit | Non-Defendant DME supplier |
| 5 | 28-day rental of Game Ready intermittent pneumatic compression and cold therapy system | Non-Defendant DME supplier |
| 6 | 28-day rental of a pulsed laser therapy device | Non-Defendant DME supplier |

On January 2, 2023, Liang purportedly issued two prescriptions in the name of IA, despite Liang not examining or otherwise treating IA on that date, for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Knee brace – R<br>Shoulder brace – R | **BH Ortho** |
| 2 | EMS Unit<br>EMS placement belt<br>Massager | Non-Defendant DME supplier |

On January 30, 2023, after a purported follow-up examination with Liang, Liang purportedly issued two prescriptions in the name of IA for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical traction<br>LSO brace<br>TLSO brace | **Hatzalah OS** |
| 2 | EMS Unit<br>EMS placement belt<br>Massager | Non-Defendant DME supplier |

On March 1, 2023, after a purported follow-up examination with Liang, Liang purportedly issued a prescription in the name of IA for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Shoulder brace - L | **Hatzalah OS** |

(iii)   On January 6, 2023, an Insured named CM was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the

Cross Island Plaza Clinic.  After an initial examination with Liang on January 9, 2023, Liang purportedly issued six separate prescriptions in the name of CM for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Orthopedic car seat | **Akiva Ortho** |
| 2 | Wearable PEMF Device | **HN DME Ortho** |
| 3 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp | Non-Defendant DME supplier |
| 4 | 6-week rental of a SAM unit | Non-Defendant DME supplier |
| 5 | 28-day rental of Game Ready intermittent pneumatic compression and cold therapy system | Non-Defendant DME supplier |
| 6 | 28-day rental of a pulsed laser therapy device | Non-Defendant DME supplier |

On February 6, 2023, after a purported follow-up examination, Liang purportedly issued two prescriptions in the name of CM for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Knee brace – R<br>Shoulder brace – R | **Hatzalah OS** |
| 2 | Wearable PEMF Device | Non-Defendant DME supplier |

On May 15, 2023, after a purported follow-up examination with Liang, Liang purportedly issued a prescription in the name of CM for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical traction<br>LSO brace<br>Knee brace - L | **Hatzalah OS** |

(iv)    On July 6, 2023, an Insured named SP was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Cross Island Plaza Clinic.  After an initial examination with Yledede Cummings, N.P. ("Cummings") on July 25, 2023, Cummings purportedly issued six separate prescriptions in the name of CM for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Orthopedic car seat<br>Trans elec jt stim dev sys | **Global Versus** (billed HCPCS Code T5001 only) |
| 2 | Orthopedic car seat<br>Trans elec jt stim dev sys | **Topaz V** (billed HCPCS Code E0762 only) |
| 3 | Wearable PEMF Device | Non-Defendant DME supplier |
| 4 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp<br>Massager<br>EMS unit<br>EMS belt | Non-Defendant DME supplier |
| 5 | 6-week rental of a SAM unit | Non-Defendant DME supplier |
| 6 | 28-day rental of Game Ready intermittent pneumatic compression and cold therapy system | Non-Defendant DME supplier |

On September 19, 2023, after a purported follow-up examination with Cummings, Cummings purportedly issued a prescription in the name of CM for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Knee brace – R-L | Non-Defendant DME supplier |

On October 16, 2023, after a purported follow-up examination with Cummings, Cummings purportedly issued two prescriptions in the name of CM for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical traction<br>LSO brace | Non-Defendant DME supplier |
| 2 | Shoulder brace – R | Non-Defendant DME supplier |

(v)     On July 16, 2023, an Insured named LD was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Cross Island Plaza Clinic.  After an initial examination with Cummings on July 25, 2023, Cummings purportedly issued five separate prescriptions in the name of LD for:

|   | Item(s) Prescribed | Prescription Provided to: |
|---|---|---|
| 1 | Orthopedic car seat<br>Trans elec jt stim dev sys | **Global Versus** (billed HCPCS Code T5001 only) |
| 2 | Orthopedic car seat<br>Trans elec jt stim dev sys | **Topaz V** (billed HCPCS Code E0762 only) |
| 3 | Wearable PEMF Device | Non-Defendant DME supplier |
| 4 | 6-week rental of a SAM unit | Non-Defendant DME supplier |
| 5 | 28-day rental of Game Ready intermittent pneumatic compression and cold therapy system | Non-Defendant DME supplier |

(vi)     On April 10, 2022, an Insured named DB was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Hillside Ave. Clinic.  After an initial examination with Sonia Sikand, P.A. ("Sikand") on April 11, 2022, Sikand purportedly issued four separate prescriptions in the name of DB for:

|   | Item(s) Prescribed | Prescription Provided to: |
|---|---|---|
| 1 | Orthopedic car seat | Non-Defendant DME supplier |
| 2 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp<br>Water circulating pad with pump | Non-Defendant DME supplier |
| 3 | SAM unit rental | Non-Defendant DME supplier |
| 4 | 28-day rental of cold-therapy compression unit | Non-Defendant DME supplier |

On May 11, 2022, after a purported follow-up examination with Sikand, Sikand purportedly issued two prescriptions in the name of DB for:

|   | Item(s) Prescribed | Prescription Provided to: |
|---|---|---|
| 1 | EMS unit<br>EMS belt<br>Massager | Non-Defendant DME supplier |
| 2 | Wrist WHO<br>Shoulder stabilizing brace – L - R | Non-Defendant DME supplier |

On July 6, 2022, after a purported follow-up examination with Sikand, Sikand purportedly issued a prescription in the name of DB for:

| | Item(s) Prescribed | Prescription Provided to: |
|---|---|---|
| 1 | Cervical traction<br>LSO brace | **BH Ortho** |

(vii)   On June 25, 2022, an Insured named LL was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Hillside Ave. Clinic.  After an initial examination with Sikand on June 29, 2022, Sikand purportedly issued two separate prescriptions in the name of LL for:

| | Item(s) Prescribed | Prescription Provided to: |
|---|---|---|
| 1 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp | Non-Defendant DME supplier |
| 2 | 28-day rental of cold-therapy compression unit | Non-Defendant DME supplier |

On July 25, 2022, after a purported follow-up examination with Sikand, Sikand purportedly issued two prescriptions in the name of LL for:

| | Item(s) Prescribed | Prescription Provided to: |
|---|---|---|
| 1 | Knee brace – L<br>Shoulder brace – L | **BH Ortho** |
| 2 | EMS unit<br>EMS belt<br>Massager | Non-Defendant DME supplier |

On August 29, 2022, after a purported follow-up examination with Sikand, Sikand purportedly issued a prescription in the name of LL for:

| | Item(s) Prescribed | Prescription Provided to: |
|---|---|---|
| 1 | Cervical traction<br>LSO brace<br>Shoulder brace | **BH Ortho** |

(viii)   On July 28, 2022, an Insured named AF was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Hillside Ave. Clinic.  After an initial examination with Sikand on August 1, 2022, Sikand purportedly issued two separate prescriptions in the name of AF for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp | Non-Defendant DME supplier |
| 2 | 28-day rental of cold-therapy compression unit | Non-Defendant DME supplier |

On August 29, 2022, after a purported follow-up examination with Sikand, Sikand purportedly issued two prescriptions in the name of AF for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical traction<br>LSO brace | **BH Ortho** |
| 2 | EMS unit<br>EMS belt<br>Massager | Non-Defendant DME supplier |

On September 26, 2022, after a purported follow-up examination with Sikand, Sikand purportedly issued a prescription in the name of AF for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Knee brace - L | **BH Ortho** |

(ix)   On November 14, 2022, an Insured named TD was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Hillside Ave. Clinic.  After an initial examination with Sikand on November 16, 2022, Sikand purportedly issued three separate prescriptions in the name of TD for:

|   | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|

| | | |
|---|---|---|
| 1 | Ortho Seat | **Akiva Ortho** |
| 2 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board<br>Egg crate mattress<br>Infrared heating lamp | Non-Defendant DME supplier |
| 3 | 28-day rental of cold-therapy compression unit | Non-Defendant DME supplier |

On December 14, 2022, after a purported follow-up examination with Sikand, Sikand purportedly issued two prescriptions in the name TD for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Hip brace – L<br>Shoulder brace - R | **BH Ortho** |
| 2 | EMS unit<br>EMS belt<br>Massager | Non-Defendant DME supplier |

On March 1, 2023, after a purported follow-up examination with Sikand, Sikand purportedly issued a prescription in the name of TD for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical traction<br>LSO brace | **NK Reliable Ortho** |

(x)     On December 5, 2022, an Insured named DJ was purportedly involved in a motor vehicle accident and thereafter purportedly started treating at the Hillside Ave. Clinic.  After an initial examination with Sikand on December 7, 2022, Sikand purportedly issued three separate prescriptions in the name of DJ for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | 6-week SAM unit rental | Non-Defendant DME supplier |
| 2 | Cervical collar<br>Lumbosacral support<br>Cervical pillow<br>Lumbar cushion<br>Bed board | Non-Defendant DME supplier |

| | | |
|---|---|---|
| | Egg crate mattress | |
| 3 | 28-day rental of Game Ready intermittent pneumatic compression and cold therapy system | Non-Defendant DME supplier |

On January 2, 2023, after a purported follow-up examination with Sikand, Sikand purportedly issued two prescriptions in the name DJ for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Knee brace – L<br>Shoulder brace - L | **BH Ortho** |
| 2 | EMS unit<br>EMS belt<br>Massager | Non-Defendant DME supplier |

On February 2, 2023, Sikand purportedly issued a prescription in the name of DJ despite Sikand not examining or otherwise treating DJ on that date, for:

| | **Item(s) Prescribed** | **Prescription Provided to:** |
|---|---|---|
| 1 | Cervical traction<br>LSO brace | **Hatzalah OS** |

186.   These are only representative examples.

187.   In keeping with the fact that the prescriptions for Fraudulent Equipment provided to the Defendants by Referring Providers at Clinics were not medically necessary and provided pursuant to a predetermined fraudulent protocol, the Referring Providers who purportedly issued the prescriptions for Fraudulent Equipment virtually never had contemporaneously dated medical records, such as an examination report, that identified the Fraudulent Equipment listed on the prescriptions that the Defendants used to support the charges identified in Exhibits "1" – "13".

188.   Also, it did not contain any sufficient information to explain why any of the prescribed Fraudulent Equipment was medically necessary or how it would help the Insureds.

189.   For example, Insureds were repeatedly prescribed Transcutaneous Electrical Joint Stimulation Devices (TEJSD) Devices, which are devices that deliver electrical stimulation

intended to reduce the level of pain and symptoms associated with arthritis in a joint, and these prescriptions were routed to Topaz V.

190.    Such an arthritic condition would need to be documented in a contemporaneous medical record, but virtually every Insured prescribed these TEJSD Devices did not have a documented arthritic condition, or to the extent there was a documented arthritic condition, the contemporaneous medical record was devoid of any mention that a TEJSD Device was even prescribed.

191.    Furthermore, to the extent that prescriptions for Fraudulent Equipment were contemporaneously dated with follow-up examinations, the Referring Providers' follow-up examination reports never referenced or discussed the Insureds' newly prescribed Fraudulent Equipment.

192.    Even more, when the Insureds continued to seek treatment at the Rockaway Ave. Clinic, the follow-up examination reports generated by the Referring Providers virtually never referenced or discussed the Insureds' previously prescribed Fraudulent Equipment, and virtually never provided any indication whether to continue using any of previously prescribed Fraudulent Equipment.

193.    Additionally, the prescriptions purportedly issued by Referring Providers at the Clinics were never given to the Insureds but were routed directly to the Defendants, or to the other non-Defendant DME suppliers, thus taking any risk out of the equation that an Insured would fill the prescription from an outside source or not fill all or part of the prescription. In fact, in many cases, the Insureds were provided with Fraudulent Equipment directly from receptionists at the Clinics, without any interaction with or instruction concerning their use from the Defendants, other the other non-Defendant DME suppliers, or a healthcare provider.

194.    As also part of the fraudulent scheme, the prescriptions purportedly issued by Referring Providers at the Clinics were purposefully generic and vague so as to allow the Defendants to choose the specific type of Fraudulent Equipment that they purported to provide Insureds and bill Liberty Mutual and other New York automobile insurers, in order to increase their financial gain.

195.    By way of example, rather than specifying the type lumbosacral or shoulder orthosis that patients should receive by providing a specific HCPCS Code – or a detailed description that could only be associated with one type of HCPCS Code – the Referring Providers purportedly issued prescriptions containing the phrase "LSO brace" and "Shoulder brace" with the intent of enabling the Defendants to select a specific type of support that was more highly priced and profitable, instead of issuing prescriptions for support braces that were actually needed in the first instance, to the extent they were actually needed at all.

196.    In addition to these vague prescriptions which allowed the Defendants to choose the specific type of Fraudulent Equipment that they purported to provide Insureds, after receiving these bogus prescriptions, the Defendants billed Liberty Mutual for purportedly providing items that were never even prescribed by the Referring Providers, such as Osteogenesis Bone Simulators or Positioning Seats for Persons with Special Orthopedic Needs, as described below.

<div style="text-align:center">

**2)    Prescriptions for Wearable PEMF Devices or Osteogenesis Bone Stimulators**

</div>

197.    Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign, and MB Century each submitted billing to Liberty Mutual for purportedly providing Insureds with Osteogenesis Bone Stimulations using HCPCS Code E0747 with a charge of $3,300.00.

198.    As a threshold matter, the billing submitted by these DME Defendants for Osteogenesis Bone Stimulations using HCPCS Code E0747 was medically unnecessary because

the majority of prescriptions issued to Insureds as part of the predetermined treatment protocol were not even issued for Osteogenesis Bone Stimulators at all, but were instead prescriptions for "Wearable PEMF Devices".

199.    Osteogenesis bone stimulators are devices which promote bone growth to help heal broken bones where there is a fracture of a long bone, and there are only specific circumstances where an osteogenesis bone stimulator would be medically necessary.

200.    By contrast, a PEMF (Pulsed Electromagnetic Field) Device is a device that purports to promote pain relief of soft tissue injuries by increasing blood flow to the affected area.

201.    The FDA has not approved medical applications of PEMF Devices, and wearable PEMF Devices are considered investigational by most major medical insurers and not covered by their policies.

202.    PEMF Devices are Non-Fee Schedule items that fall using HCPCS Code E0761. As a Non-Fee Schedule item, the Defendants were entitled to receive the lesser of either the price available to the general public, or their legitimate acquisition cost plus 50 percent.

203.    Retail prices for PEMF Devices available to the general public on various online retailers, such as Oxford Medical Instruments (oxfordmedicals.com) and Home Rehab Equipment (homerehabequipment.com) range between $199.00 to $375.00.

204.    By contrast, Osteogenesis Bone Stimulators are Fee Schedule items, with a listed reimbursement of $3,300.00 per unit.

205.    As part of the Defendants' fraudulent scheme, despite receiving prescriptions for PEMF Devices, Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign, and MB Century each billed Liberty Mutual for purportedly supplying Osteogenesis Bone Stimulators. For example:

(i)     On June 22, 2022, an Insured named JG was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 441 Willis Ave., Bronx, New York.  On September 8, 2022, Jean-Pierre Barakat, M.D. ("Barakat") purportedly issued a prescription in the name of JG for a "Wearable PEMF Device" that was provided to **Rambam Ortho**, but on September 17, 2022, Rambam Ortho purportedly provided an "Osteogenesis Bone Stimulator" to JG and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(ii)    On October 2, 2022, an Insured named GA was purportedly involved in a motor vehicle accident and purportedly started treating at the 99th St. Clinic.  On October 11, 2022, Barakat purportedly issued a prescription in the name of GA for a "Wearable PEMF Device" that was provided to **Rambam Ortho**, but on October 22, 2022, Rambam Ortho purportedly provided an "Osteogenesis Bone Stimulator" to GA and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(iii)   On November 11, 2022, two Insureds named AB and DB were purportedly involved in a motor vehicle accident and both purportedly started treating at the Ave. N Clinic.  On November 30, 2022, Shai Bikel, N.P. ("Bikel") purportedly issued prescriptions in the name of AB and DB for a "Wearable PEMF Device" that were both provided to **HN DME Ortho**, but on December 6, 2022, HN DME Ortho purportedly provided an "Osteogenesis Bone Stimulator" to both AB and DB and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00 respectively;

(iv)    On December 8, 2022, an Insured named AG was purportedly involved in a motor vehicle accident and purportedly started treating at the Ave. N Clinic. On December 20, 2022, Bikel purportedly issued a prescription in the name of AG for a "Wearable PEMF Device" that was provided to **HN DME Ortho**, but on December 27, 2022, HN DME Ortho purportedly provided an "Osteogenesis Bone Stimulator" to AG and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(v)     On February 14, 2023, an Insured named GH was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 2422 Knapp Street, Brooklyn, New York.  On February 14, 2023, *the same date as the accident*, Jeremie Rachunow, M.D. purportedly issued a prescription in the name of GH for a "Wearable PEMF Device" that was provided to **Skyline BK**, but on April 3, 2023, Skyline BK purportedly provided an "Osteogenesis Bone Stimulator" to GH and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(vi)     On February 16, 2023, an Insured named GI was purportedly involved in a motor vehicle accident and purportedly started treating at the 99th St. Clinic. On March 14, 2023, Barakat purportedly issued a prescription in the name of GI for a "Wearable PEMF Device" that was provided to **NK Reliable Ortho**, but on April 5, 2023, NK Reliable Ortho purportedly provided an "Osteogenesis Bone Stimulator" to GI and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(vii)    On February 18, 2023, an Insured named VR was purportedly involved in a motor vehicle accident and purportedly started treating at the Ave. N Clinic.  On March 2, 2023, Bikel purportedly issued a prescription in the name of VR for a "Wearable PEMF Device" that was provided to **Skyline BK**, but on March 8, 2023, Skyline BK purportedly provided an "Osteogenesis Bone Stimulator" to VR and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(viii)   On February 20, 2023, an Insured named AU was purportedly involved in a motor vehicle accident and purportedly started treating at Clinic located at 441 Willis Ave., Bronx, New York.  On March 3, 2023, Barakat purportedly issued a prescription in the name of AU for a "Wearable PEMF Device" that was provided to **NK Reliable Ortho**, but on April 7, 2023, NK Reliable Ortho purportedly provided an "Osteogenesis Bone Stimulator" to AU and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(ix)     On August 10, 2023, an Insured named DQ was purportedly involved in a motor vehicle accident and purportedly started treating at the Cross Island Plaza Clinic.  On August 14, 2023, Cummings purportedly issued a prescription in the name of DQ for a "Wearable PEMF Device" that was provided to **Biometric Sign**, but on August 28, 2023, Biometric Sign purportedly provided an "Osteogenesis Bone Stimulator" to DQ and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(x)      On August 16, 2023, an Insured named AS was purportedly involved in a motor vehicle accident and purportedly started treating at the Cross Island Plaza Clinic.  On September 16, 2023, *the same date as the accident*, Cummings purportedly issued a prescription in the name of AS for a "Wearable PEMF Device" that was provided to **Biometric Sign**, but on September 2, 2023, Biometric Sign purportedly provided an "Osteogenesis Bone Stimulator" to AS and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00;

(xi)     On October 27, 2023, an Insured named MC was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 102-28 Jamaica Ave., Jamaica, New York.  On November 2,

2023, Quais Sayeed, D.O. ("Sayeed") purportedly issued a prescription in the name of MC for a "Wearable PEMF Device" that was provided to **MB Century**, but on November 24, 2023, MB Century purportedly provided an "Osteogenesis Bone Stimulator" to MC and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00; and

(xii)   On October 29, 2023, an Insured named OK was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 1339 E Gun Hill Rd., Bronx, New York.  On November 2, 2023, John McGee, D.O. ("McGee") purportedly issued a prescription in the name of OK for a "Wearable PEMF Device" that was provided to **MB Century**, but on November 21, 2023, MB Century purportedly provided an "Osteogenesis Bone Stimulator" to OK and billed Liberty Mutual using HCPCS Code E0747 with a charge of $3,300.00.

206.    These are only representative examples.  Every Insured in Exhibits "1" – "13" who was issued a prescription for a "Wearable PEMF Device" instead purportedly received an "Osteogenesis Bone Stimulator" from Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign, or MB Century.

207.    While Akiva Ortho, HN DME Ortho, and NK Reliable Ortho exclusively received prescriptions calling for a "Wearable PEMF Device," Biometric Sign, Skyline BK and MB Century also received prescriptions that called for an "Osteogenesis Bone Stimulator," which were similarly issued as part of a predetermined treatment protocol and without regard for medical necessity.

208.    For example, before an "Osteogenesis Bone Stimulator" becomes medically necessary, an Insured would first need to have a documented fracture of one of their long bones and documentation that there has been no significant healing of that bone for at least 90 days.

209.    In those limited circumstances, a bone stimulator could be medically necessary to help promote bone growth and heal the fracture.

210.    However, none of the Insureds identified in Exhibits "1" – "13" who purportedly received Osteogenesis Bone Stimulators had any documented fracture, or, even to the extent there

was a documented fracture, there was no documentation in the medical record that there was no significant healing of the bone for at least 90 days.

211. In fact, of the Insureds who received prescriptions that actually called for "Osteogenesis Bone Stimulators," these prescriptions were issued within days of the underlying accident and far outside the realm of medical necessity. For example:

   (i)     On April 21, 2023, an Insured named YS was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 2354 Westchester Ave., Bronx, New York. On April 24, 2023, *3 days after the accident*, Jordan Fersel, M.D. purportedly issued a prescription in the name of IS for an "Osteogenesis Bone Stimulator" that was provided to **Skyline BK**;

   (ii)    On May 13, 2023, an Insured named AD was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 8937 Myrtle Ave., Glendale, New York. On May 17, 2023, *4 days after the accident*, David Carmili, M.D. purportedly issued a prescription in the name of AD for an "Osteogenesis Bone Stimulator" that was provided to **Skyline BK**;

   (iii)   On July 29, 2023, two Insureds named AA and AW were purportedly involved in a motor vehicle accident and both purportedly started treating at the Clinic located at 2088 Flatbush Ave., Brooklyn, New York. On August 17, 2023, *19 days after the accident*, John McGee, D.O. purportedly issued prescriptions in the names of both AA and AW for an "Osteogenesis Bone Stimulator" that were provided to **Biometric Sign**;

   (iv)    On August 18, 2023, an Insured named NT was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 150 Graham Ave., Brooklyn, New York. On August 29, 2023, *11 days after the accident*, Gordon Davis, D.O. ("Davis") purportedly issued a prescription in the name of NT for an "Osteogenesis Bone Stimulator" that was provided to **Biometric Sign**; and

   (v)     On September 24, 2023, an Insured named JC was purportedly involved in a motor vehicle accident and purportedly started treating at the Clinic located at 1611 E New York Ave., Brooklyn, New York. On November 29, 2023, *66 days after the accident*, Davis purportedly issued a prescription in the name of JC for an "Osteogenesis Bone Stimulator" that was provided to **MB Century**;

212.     These are only representative examples.

213.     In keeping with the fact that the prescriptions used by  Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign, and MB Century to bill Liberty Mutual for "Osteogenesis Bone Stimulators" were fraudulently issued by unidentifiable third-party individuals, issued as part of a predetermined fraudulent protocol, and issued without medical necessity, multiple Insureds were purportedly issued prescriptions on a date the Insured was not examined or otherwise treated by the Referring Provider who purportedly issued the prescription.

214.     In further keeping with the fact that the prescriptions for "Wearable PEMF Devices" that were used to support the charges identified in Exhibits "1" – "13" were not medically necessary and were issued pursuant to a predetermined fraudulent protocol, the contemporaneously dated medical records, such as an initial examination report or a follow-up examination report, virtually never identified that a Wearable PEMF Device or Osteogenesis Bone Stimulator was purportedly prescribed to the Insureds.

215.     To the extent that the contemporaneous reports issued by Referring Providers at the Clinics did reference that a Wearable PEMF Device or Osteogenesis Bone Stimulator was prescribed, the evaluation reports virtually never contained any specific detail explaining why or how the prescribed Wearable PEMF or Osteogenesis Bone Stimulator would benefit or aid the Insured's condition.

216.     Furthermore, and in keeping with the fact that the prescriptions for "Wearable PEMF Devices" or "Osteogenesis Bone Stimulators" were not medically necessary and were issued pursuant to a predetermined fraudulent protocol, to the extent that the Insured returned for a follow-up visit with the Referring Provider, the follow-up examination reports never referenced or discussed the Insureds' previously prescribed Wearable PEMF Devices or Osteogenesis Bone Stimulators, and never provided any indication whether to continue using the device.

### 3) The Predetermined Protocols Involving Positioning Seats for Persons with Special Orthopedic Needs

217. Akiva Ortho, VR Ortho, Global Versus, and Concept Line each submitted billing to Liberty Mutual for purportedly providing Insureds with Positioning Seats for Persons with Special Orthopedic Needs using HCPCS Code T5001 with a charge of $756.03.

218. As a threshold matter, the billing submitted by these DME Defendants for Positioning Seats for Persons with Special Orthopedic Needs using HCPCS Code T5001 was medically unnecessary because the prescriptions issued to Insureds as part of the predetermined treatment protocol were not even issued for Positioning Seats for Persons with Special Orthopedic Needs at all, but were instead prescriptions for an "Orthopedic Car Seat" or an "Ortho Seat".

219. Positioning Seats for Persons with Special Orthopedic Needs are car seats for persons who are unable to rely on their vehicles built-in restraint systems due to their special orthopedic needs, such as cerebral palsy, and require a more substantial harness system to safely restrain themselves inside a vehicle. For example:



220. By contrast, Liberty Mutual Insureds reported that the orthopedic car seats provided by the Defendants were seat pads designed to be placed on top of an existing car seat that added

cushioning to the seat and did not contain a seatbelt or restraint of any kind.  The following is a representative example:



221.    These types of car seats fall using HCPCS Code E0190, which is defined as a "Positioning cushion/pillow/wedge, any shape or size, includes all components and accessories", and is a Fee Schedule item with a listed reimbursement of $22.04, substantially less than the $756.03 charged by the Defendants as part of their fraudulent scheme.

222.    As part of the Defendants' fraudulent scheme, despite receiving prescriptions for "Orthopedic car seats" or "Ortho seats," Akiva Ortho, VR Ortho, Global Versus, Concept Line, and Skyline BK each billed Liberty Mutual for instead supplying Positioning Seats for Persons with Special Orthopedic Needs.

223.    For example, as part of the predetermined protocol, each of the following Insureds received prescriptions from the Cross Island Plaza Clinic containing a photocopied signature of the Referring Provider calling for an "Orthopedic Car Seat" that was instead used by the Defendants to bill Liberty Mutual for Positioning Seats for Persons with Special Orthopedic Needs:

(i)      On October 21, 2022, an Insured named DD was purportedly involved in a motor vehicle accident.  On October 31, 2022, a prescription bearing the photocopied signature of Liang was issued for an "Orthopedic car seat" and provided to **Akiva Ortho**, and on January 14, 2023 Akiva Ortho purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to DD and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03;

(ii)     On January 5, 2023, an Insured named DW was purportedly involved in a motor vehicle accident.  On January 9, 2023, a prescription bearing the photocopied signature of Liang was issued for an "Orthopedic car seat" and provided to **Akiva Ortho**, and on January 14, 2023 Akiva Ortho purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to DW and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03;

(iii)    On January 5, 2023, two Insureds named CW and DW were purportedly involved in a motor vehicle accident. On January 9, 2023, prescriptions bearing the photocopied signature of Liang were issued for an "Orthopedic car seat" and provided to **Skyline BK**, and on March 6, 2023 Skyline BK purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to both CW and DW and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03 respectively;

(iv)    On January 24, 2023, an Insured named SR was purportedly involved in a motor vehicle accident.  On January 25, 2023, a prescription bearing the photocopied signature of Liang was issued for an "Orthopedic car seat" and provided to **Skyline BK**, and on March 6, 2023 Skyline BK purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to SR and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03;

(v)     On April 29, 2023, an Insured named GW was purportedly involved in a motor vehicle accident.  On May 1, 2023, a prescription bearing the photocopied signature of Sikand was issued for an "Ortho seat" and provided to **VR Ortho**, and on May 22, 2023 VR Ortho purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to GW and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03;

(vi)    On June 13, 2023, an Insured named CQ was purportedly involved in a motor vehicle accident.  On June 14, 2023, a prescription bearing the photocopied signature of Elizabeth Lafargue, N.P. ("Lafargue") was issued for an "Orthopedic car seat" and provided to **VR Ortho**, and on June 19, 2023 VR Ortho purportedly provided a "Positioning Seat for

Persons with Special Orthopedic Needs" to CQ and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03;

(vii)    On July 16, 2023, an Insured named LD was purportedly involved in a motor vehicle accident. On July 25, 2023, a prescription bearing the photocopied signature of Cummings was issued for an "Orthopedic car seat" and provided to **Global Versus**, and on August 5, 2023 VR Ortho purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to CQ and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03;

(viii)   On July 31, 2023, two Insureds named SH and TH were purportedly involved in a motor vehicle accident. On August 1, 2023 and August 14, 2023, prescriptions bearing the photocopied signature of Cummings were issued for an "Orthopedic car seat" and provided to **Global Versus**, and on August 6, 2023 and September 4, 2023, Global Versus purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to both SH and TH and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03 respectively;

(ix)    On November 14, 2023, an Insured named GM was purportedly involved in a motor vehicle accident. Also on November 14, 2023, a prescription bearing the photocopied signature of Cummings was issued for an "Orthopedic car seat" and provided to **Concept Line**, and on December 4, 2023, Concept Line purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to GM and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03; and

(x)    On November 23, 2023, an Insured named IE was purportedly involved in a motor vehicle accident. Also on November 23, 2023, a prescription bearing the photocopied signature of Cummings was issued for an "Orthopedic car seat" and provided to **Concept Line**, and on December 4, 2023, Concept Line purportedly provided a "Positioning Seat for Persons with Special Orthopedic Needs" to IE and billed Liberty Mutual using HCPCS Code T5001 with a charge of $756.03.

224.    These are only representative examples.

225.    In further keeping with the fact that the prescriptions for "Orthopedic Car Seats" or "Ortho seats" that were used to support the charges identified in Exhibits "1" – "13" were not medically necessary and were issued pursuant to a predetermined fraudulent protocol, to the extent any contemporaneous reports issued by a Referring Provider referenced that an Orthopedic Car

Seat was prescribed, these evaluation reports virtually never contained any specific detail explaining why or how the prescribed Orthopedic Car Seat would benefit or aid the Insured, nor did these reports indicate that the Insured was unable to use a vehicle's build-in restraint system due to a special orthopedic need.

226.    In addition, the contemporaneous medical records do not document nor indicate that Insureds prescribed an "Orthopedic car seat" or "Ortho seat" were unable to use the vehicle's built-in restraint system due to a special orthopedic need.

227.    Furthermore, and in keeping with the fact that the prescriptions for "Orthopedic Car Seats" were not medically necessary and were issued pursuant to a predetermined fraudulent protocol, to the extent that the Insured returned for a follow-up visit with the Referring Provider, the follow-up examination reports never referenced or discussed the Insureds' previously prescribed Orthopedic Car Seats, and never provided any indication whether to continue using the device.

**F.    The Improper Distribution of Fraudulent Equipment to Insureds by the Defendants Without Valid Prescriptions**

228.    As a threshold matter, for a prescription to be valid it must first actually be issued by a healthcare provider who has determined that such a prescription is medically necessary.

229.    However, many of the prescriptions for Fraudulent Equipment purportedly issued by Referring Providers from the Clinics were not valid prescriptions, as they routinely: (i) contained a photocopied signature of the Referring Provider; (ii) contained a signature stamp of the Referring Provider; (iii) were not referenced or explained in any contemporaneous medical record; and/or (iv) were issued on dates the Referring Provider never examined or otherwise treated the Insured.

230.    In addition, the DME Providers are not licensed medical professional corporations, and the Paper Owner Defendants are not licensed to prescribe DME or OD to Insureds. As such, the Defendants were not lawfully permitted to prescribe or otherwise determine what DME or OD is medically necessary for the Insureds. For the same reason, the Defendants cannot properly dispense DME or OD to an Insured without a valid prescription from a licensed healthcare professional that definitively identifies medically necessary DME and/or OD to be provided.

231.    However, as part of the fraudulent scheme, in many of the fraudulent claims identified in Exhibits "1" – "13", the Defendants improperly decided what DME and OD to provide to Insureds without a valid definitive prescription from a licensed healthcare provider, to the extent that they actually provided any DME or OD to the Insureds.

232.    More specifically, the prescriptions for Fraudulent Equipment purportedly issued by the Referring Providers and provided to the Defendants did not definitively identify medically necessary DME and/or OD to be provided to the Insureds. For example, the prescriptions did not: (i) provide a specific HCPCS Code for the DME and/or OD to be provided; or (ii) provide sufficient detail to direct the Defendants to a unique type of DME and/or OD.

233.    To the extent that some of the fraudulent claims identified in Exhibits "1" - "13" were based upon prescriptions that contained HCPCS Codes next to the descriptions of DME and/or OD, the prescriptions were still vague as the HCPCS Code identified on the prescription did not correspond with the description next to the code, or the Defendants simply ignored the HCPCS Code listed on the prescription and provided an item with a different HCPCS Code.

234.    While the prescriptions purportedly issued by the Referring Providers did not identify a specific type of medically necessary DME and/or OD for the Insureds, the Defendants did not obtain any additional documentation from the Referring Providers approving or otherwise

71

acknowledging that specific types of DME and/or OD – either by HCPCS Code or a detailed description – was medically necessary for the Insureds.

235. These vague and generic prescriptions purportedly issued by the Referring Providers were intended to and actually provided the Defendants with the opportunity to select from among several different pieces of Fraudulent Equipment, each having varying reimbursement rates in the Medicaid or WC Fee Schedule.

236. In addition, in many of the fraudulent claims identified in Exhibits "1" – "13", the Defendants improperly decided what DME and OD to provide to Insureds without a valid definitive prescription from a licensed healthcare provider because the Defendants provided Fraudulent Equipment that was not identified on the prescription.

237. In a legitimate clinical setting, when a DME/OD supplier would obtain a prescription that did not contain a HCPCS Code or a sufficient description to identify a specific item of DME and/or OD, the DME/OD Supplier would contact the referring healthcare provider to request clarification on the specific items that were being requested, including the features and requirements to dispense the appropriate DME and/or OD prescribed to each patient.

238. As also part of a legitimate clinical setting, the DME/OD Supplier would have the referring healthcare provider sign documentation to confirm that the specific item of DME and/or OD – identified by HCPCS Code or a detailed description – was medically necessary for the patient.

239. Upon information and belief, the Defendants never contacted the referring healthcare provider to seek instruction and/or clarification, but rather made their own determination as to the specific Fraudulent Equipment purportedly provided to each Insured. Not surprisingly, the Defendants each elected to provide the Insureds with Fraudulent Equipment that

had a reimbursement rate in the higher-end of the permissible range under the Medicaid or WC Fee Schedule.

240.    For example, and as part of the Defendants' common scheme and operation under the control of the Secret Owner, both BH Ortho and Hatzalah OS improperly decided what DME/OD to provide Insureds – to the extent any items were actually provided – without a valid definitive prescription from a licensed healthcare provider involved, as shown above, for every prescription containing a vague description of a "LSO brace".

241.    The prescriptions from the Referring Providers containing descriptions "LSO brace," without an identifying HCPCS Code, correspond to over 20 different unique HCPCS Codes, each with its own distinguishing features and maximum reimbursable amount that can be dispensed to Insureds.

242.    As unlicensed healthcare providers in regard to the prescribing of DME and/or OD items to patients, the Defendants were not legally permitted to determine which of the above-available options were medically necessary for each Insured based upon a vague prescription for a "LSO brace."

243.    However, the Defendants never contacted the Referring Provider, and instead decided themselves which specific type of Fraudulent Equipment they would bill Liberty Mutual for, and accordingly purportedly provide the Insureds based upon the vague and generic prescriptions for Fraudulent Equipment.

244.    In fact, every time that BH Ortho and Hatzalah OS received a prescription from the Referring Providers for a "LSO brace", they both billed Liberty Mutual using HCPCS Code L0639 requesting a reimbursement of $844.13 for purportedly providing a custom-fit lumbar orthosis, and thereby asserted that they provided the Insureds with that specific item, which resulted in needlessly inflated charges to Liberty Mutual.

245.     Additionally, and as part of the Defendants' common scheme and the control of the Secret Owner, each and every time BH Ortho and Hatzalah OS received a prescription from the Referring Providers for a "Shoulder brace", these Defendants chose to supply and bill Liberty Mutual using HCPCS Code L3671 requesting a reimbursement of $690.23 for purportedly providing a custom-fabricated shoulder orthosis, despite the Fee Schedule containing eight different types of shoulder orthoses.

246.     Similarly, and as described in more detail above, in response to prescriptions for a "Wearable PEMF Device," Rambam Ortho, HN DME Ortho, Skyline BK, NK Reliable Ortho, Biometric Sign and MB Century instead chose to supply and bill Liberty Mutual using HCPCS Code E0747 requesting a reimbursement of $3,300.00 for purportedly providing an Osteogenesis Bone Stimulator.

247.     Further, and as described in more detail above, in response to prescriptions for an "Orthopedic car seat" or "Ortho seat," Akiva Ortho, VR Ortho, Global Versus, Skyline BK, and Concept Line instead chose to supply and bill Liberty Mutual using HCPCS Code T5001 requesting a reimbursement of $756.003 for purportedly providing a Positioning Seat For Persons with Special Orthopedic Needs.

248.     These are only representative examples. To the extent that the Defendants actually provided any Fraudulent Equipment, they improperly prescribed the Fraudulent Equipment for virtually all of the claims identified in Exhibits "1" – "13" that are based upon vague and generic prescriptions because the Defendants decided which specific items of DME and/or OD to provide the Insureds.

249.     The Fraudulent Equipment provided to the Insureds identified in Exhibits "1" – "13" – to the extent that the Fraudulent Equipment was actually provided – by the Defendants was not based on: (i) prescriptions by licensed healthcare providers containing sufficient detail to

identify unique types DME and/or OD; or (ii) a determination by a licensed healthcare provider that the specific items dispensed to the Insureds were medically necessity. Rather, the Fraudulent Equipment identified in Exhibits "1" – "13" were the result of decisions made by the Defendants.

250.    In all the claims identified in Exhibits "1" - "13" that were based upon vague and generic language contained in the prescriptions, the Defendants falsely represented that the Fraudulent Equipment purportedly provided to Insureds was based upon prescriptions for reasonable and medically necessary DME and/or OD issued by healthcare providers with lawful authority to do so. To the contrary, the Fraudulent Equipment was purportedly provided by the Defendants' own determination of what unique types of Fraudulent Equipment to purportedly provide, and, thus, was not eligible for reimbursement of PIP Benefits.

### G.    The Defendants' Fraudulent Billing for DME and/or OD

251.    As part of the Defendants' common scheme, the bills submitted to Liberty Mutual and other New York automobile insurers by the Defendants were also fraudulent in that they each made virtually identical misrepresentations in the DME and OD purportedly provided to the Insureds.

252.    In the bills and other documents submitted to Liberty Mutual, the Defendants misrepresented that the prescriptions relating to Fraudulent Equipment were based upon some legitimate arms-length relationship, when the prescriptions for Fraudulent Equipment were based upon the unlawful financial arrangements between the Defendants and others who are not presently identifiable.

253.    In the bills and other documents submitted to Liberty Mutual, the Defendants also misrepresented that the prescriptions relating to Fraudulent Equipment were for reasonable and medically necessary items when the prescriptions for Fraudulent Equipment were based – not upon

medical necessity but – solely on predetermined fraudulent protocols due to unlawful financial arrangements between the Defendants and others who are presently unidentifiable.

254. Further, the Defendants misrepresented in the bills submitted to Liberty Mutual that the Fraudulent Equipment purportedly provided to Insureds were based upon prescriptions issued by licensed healthcare providers authorized to issue such prescriptions, when the Fraudulent Equipment purportedly provided were based upon decisions made by laypersons.

255. Moreover, and as explained below, the bills submitted to Liberty Mutual by the Defendants each misrepresented, to the extent that any Fraudulent Equipment was provided, that the Fee Schedule items matched the HCPCS Codes identified in the bills to Liberty Mutual, when they did not.

256. When the Defendants' submitted bills to Liberty Mutual seeking payment for Fraudulent Equipment, each of the bills contained HCPCS codes that were used to describe the type of Fraudulent Equipment purportedly provided to the Insureds.

257. By submitting bills to Liberty Mutual containing specific HCPCS Codes, the Defendants each represented that the Fraudulent Equipment purportedly provided to Insureds appropriately corresponded to the HCPCS Codes contained within each bill.

258. In virtually all of the bills submitted to Liberty Mutual for Fee Schedule items, the Defendants fraudulently represented to Liberty Mutual that the HCPCS Codes were accurate and appropriate for the Fee Schedule items purportedly provided to the Insureds – to the extent that any Fraudulent Equipment was actually provided.

259. The prescriptions from the healthcare providers contained vague and generic terms for Fraudulent Equipment to be provided to the Insureds. By contrast, the Defendants each submitted bills to Liberty Mutual containing virtually identical HCPCS codes that represented a

more expensive tier of Fee Schedule items than necessary and that could be provided based upon the type of equipment identified in the vague and generic prescriptions.

260.    As indicated above, as part of the unlawful financial arrangements between the Defendants and others who are not presently identifiable, the Defendants were provided with prescriptions purportedly issued by the Referring Providers pursuant to predetermined fraudulent protocols, which provided the Defendants with the opportunity to increase the amount they could bill Liberty Mutual for Fraudulent Equipment purportedly provided to the Insureds.

261.    However, to the extent that the Defendants provided any Fraudulent Equipment, the HCPCS codes in the bills submitted to Liberty Mutual severely misrepresented the type of Fee Schedule items purportedly provided to the Insureds.

262.    As identified in the claims contained within Exhibits "1" – "13" where the Defendants submitted bills to Liberty Mutual for Fraudulent Equipment that was purportedly "custom fitted" for each Insured, to the extent that the Fraudulent Equipment was actually provided to the Insureds, the Defendants never customized the Fraudulent Equipment as billed.

263.    For example, BH Ortho Supply and Hatzalah OS used the vague and generic language in the prescriptions purportedly issued from the Referring Providers to bill Liberty Mutual for purportedly providing custom-ft or custom fabricated orthoses using HCPCS Codes L0639, L3671, L1832, L1845, L1680 and L3900. Each of these items require that the orthotic be custom fitted or custom fabricated for the patient, the customization must be performed by a certified orthotist, and the customization must be documented in contemporaneous notes.

264.    However, despite billing Liberty Mutual – and other New York automobile insurers – using HCPCS Codes L0639, L3671, L1832, L1845, L1680 and L3900, the specific orthotics provided by these Defendants – to the extent that the Defendants provided the Insureds with any

OD – did not contain the requirements set forth in HCPCS Codes L0639, L3671, L1832, L1845, L1680 and L3900 because – at a minimum – the items were never customized for each patient.

265.   In keeping with the fact that the claims identified in Exhibits "1" – "13" for custom-fitted OD, including the claims for HCPCS Codes L0639, L3671, L1832, L1845, L1680 and L3900 fraudulently misrepresented that the Defendants satisfied all the requirements for the billed HCPCS Codes, the Defendants did not, and could not have, custom-fitted the OD as required.

266.   To the extent that any of the charges identified in Exhibits "1" – "13" for custom-fitted OD, including the claims for HCPCS Codes L0639, L3671, L1832, L1845, L1680 and L3900 were provided, none of the Defendants ever customized the equipment as required by Palmetto.

267.   To help clarify the term "custom fitted," Palmetto defined a custom fitted orthotic as something that "requires more than minimal self-adjustment at the time of delivery in order to provide an individualized fit, i.e., the item must be trimmed, bent, molded (with or without heat), or otherwise modified resulting in alterations beyond minimal self-adjustment." See Palmetto, Correct Coding – Definitions Used for Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces) – Revised.

268.   One of the key factors in identifying a "custom-fitted" orthotic is whether the item requires "minimal self-adjustment" or "substantial modification." Minimum self-adjustment, which is for off-the-shelf orthotic means that "the beneficiary, caretaker for the beneficiary, or supplier of the device can perform and that does not require the services of a certified orthotist (that is, an individual who is certified by the American Board for Certification in Orthotics and Prosthetics, Inc., or by the Board for Orthotist/Prosthetist Certification) or an individual who has specialized training. For example, adjustment of straps and closures, bending or trimming for final fit or comfort (not all-inclusive) fall into this category." See Palmetto, Correct Coding –

Definitions Used for Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces) – Revised.

269.    By contrast, a substantial modification, which is required for a custom-fitted orthotic, is defined as "changes made to achieve an individualized fit of the item that requires the expertise of a certified orthotist or an individual who has equivalent specialized training in the provision of orthotics such as a physician, treating practitioner, an occupational therapist, or physical therapist in compliance with all applicable Federal and State licensure and regulatory requirements. A certified orthotist is defined as an individual who is certified by the American Board for Certification in Orthotics and Prosthetics, Inc., or by the Board for Orthotist/Prosthetist Certification." See Palmetto, Correct Coding – Definitions Used for Off-the-Shelf versus Custom Fitted Prefabricated Orthotics (Braces) – Revised.

270.    In the claims identified in Exhibits "1" – "13" for custom-fitted OD, including the claims for HCPCS Codes L0639, L3671, L1832, L1845, L1680 and L3900, each of the Defendants fraudulently misrepresented that they provided the Insureds with OD that was custom-fitted or custom-fabricated as defined by Palmetto, by a certified orthotist.

271.    Instead, to the extent that the Defendants provided any Fraudulent Equipment billed to Liberty Mutual as custom-fitted OD, including the charges for HCPCS Codes L0639, L3671, L1832, L1845, L1680 and L3900, the Fraudulent Equipment was provided without taking any action to custom-fit the OD to the Insureds. To the extent that the Defendants attempted to make any adjustments to the DME received by Insureds identified in Exhibits "1" -"13", the Defendants only provided minimal self-adjustment, as defined by Palmetto, which only supports charges for off-the-shelf items.

272.   In keeping with the fact that the Defendants misrepresented that they custom-fitted OD purportedly provided to Insureds and billed to Liberty Mutual, the Paper Owner Defendants are not certified orthotists and did not complete sufficient training to become a certified orthotist.

273.   In addition to the fraudulent charges for custom-fit or custom-fabricated OD submitted by the Defendants, the claims identified in Exhibits "1" – "13" for HCPCS Code T5001 is another example of how, as part of their common scheme, each of the Defendants fraudulently misrepresented the Fee Schedule items purportedly provided to Insureds – to the extent that any Fraudulent Equipment was actually provided.

274.   Each of the claims identified within Exhibits "1" – "13" for HCPCS Code T5001 contained a charge for $756.03 based upon prescriptions for an "Orthopedic car seat" or "Ortho seat".

275.   However, the product represented by HCPCS Code T5001 is defined as a positioning seat for persons with special orthopedic needs, which is for persons who are unable to rely on their vehicles built-in restraint systems due to their special orthopedic needs, such as cerebral palsy.

276.   Despite billing Liberty Mutual – and other New York automobile insurers – using HCPCS Code T5001, the items provided by the Defendants – to the extent that the Defendants provided the Insureds with any item – were not positioning seats for persons with special orthopedic needs, as required by HCPCS Code T5001.

277.   By contrast, to the extent that any items were provided, they were seat pads or cushions, which are Fee Schedule items listed using HCPCS Code E0190. HCPCS Code E0190 is defined as a "Positioning cushion/pillow/wedge, any shape or size, includes all components and accessories.

278.     Unlike the fraudulent charges for $756.03 for each "orthopedic car seat" or "ortho

seat" billed using HCPCS Code T5001 – and in keeping with the fact that the fraudulent charges

were part of the Defendants' scheme to defraud Liberty Mutual and other automobile insurers –

the Fee Schedule sets a maximum reimbursement rate of $22.04 for each positioning cushion billed

using HCPCS Code E0190.

279.     In each of the claims identified within Exhibits "1" – "13" where the Defendants

billed for Fraudulent Equipment using HCPCS Code T5001, each of the bills fraudulently

mispresented that the Defendants provided the Insureds with equipment that satisfies the

requirements of HCPCS Code T5001.

280.     The items identified within Exhibits "1" – "13", to the extent that any Fraudulent

Equipment was actually provided, the Defendants fraudulently misrepresented the HCPCS Codes

identified in their billing to Liberty Mutual in order to increase the amount of No-Fault Benefits

they could obtain, and were therefore not eligible to collect No-Fault Benefits in the first instance.

**III.    The Fraudulent Billing the Defendants Submitted or Caused to be Submitted to Liberty Mutual**

281.     To support their fraudulent charges, the Defendants systematically submitted or

caused to be submitted thousands of NF-3 forms, HCFA-1500 forms, and/or treatment reports to

Liberty Mutual through and in the name of the DME Providers, seeking payment for Fraudulent

Equipment.

282.      The NF-3 forms, HCFA-1500 forms and treatment reports that the Defendants

submitted or caused to be submitted to Liberty Mutual were false and misleading in the following

material respects:

> (i)     The NF-3 forms, HCFA-1500 forms, treatment reports, prescriptions, and
> delivery receipts uniformly misrepresented to Liberty Mutual that the
> Defendants provided Fraudulent Equipment pursuant to prescriptions by
> licensed healthcare providers for reasonable and medically necessary DME

and/or OD, and therefore were eligible to receive No-Fault Benefits. In fact, the Defendants were not entitled to receive No-Fault Benefits because, to the extent that the Defendants provided any of the Fraudulent Equipment, they were not properly licensed by the DCWP as they falsified the information contained in their applications for a Dealer for Products License.

(ii) The NF-3 forms, HCFA-1500 forms, and prescriptions uniformly misrepresented to Liberty Mutual that the Defendants provided Fraudulent Equipment pursuant to prescriptions by licensed healthcare providers for reasonable and medically necessary DME and/or OD, and therefore were eligible to receive No-Fault Benefits. In fact, the Defendants were not entitled to receive No-Fault Benefits because, to the extent that the Defendants provided any of Fraudulent Equipment, it was based upon: (a) unlawful financial arrangements with others who are not presently identifiable; (b) predetermined fraudulent protocols without regard for the medical necessity of the items; and (c) decisions made by laypersons not based upon lawful prescriptions from licensed healthcare providers for medically necessary items.

(iii) The NF-3 forms, HCFA-1500 forms, and treatment reports uniformly misrepresented to Liberty Mutual that the Defendants provided Fraudulent Equipment that directly corresponded to the HCPCS Codes contained within each form, and therefore were eligible to receive No-Fault Benefits. In fact, the Defendants were not entitled to receive No-Fault Benefits because – to the extent that the Defendants provided any Fraudulent Equipment to the Insureds – Fraudulent Equipment did not meet the specific requirements for the HCPCS Codes identified in the NF-3 forms, HCFA-1500 forms, and treatment notes.

## IV.  The Defendants' Fraudulent Concealment and Liberty Mutual's Justifiable Reliance

283.   The Defendants were legally and ethically obligated to act honestly and with integrity in connection with the billing that they submitted, or caused to be submitted, to Liberty Mutual.

284.   To induce Liberty Mutual to promptly pay the fraudulent charges for Fraudulent Equipment, the Defendants systemically concealed their fraud and went to great lengths to accomplish this concealment.

285.   Specifically, they knowingly misrepresented that they were lawfully licensed by the City of New York as they never complied with regulations requiring the DME Providers to obtain a

Dealer in Products License from the DCWP because the Paper Owner Defendants falsely indicated, under penalty for false statements, in the application for a Dealer in Products License the common ownership by the Secret Owner of each of the DME Providers, and concealed these misrepresentations in order to submit bills to Liberty Mutual and prevent Liberty Mutual from discovering that Fraudulent Equipment were billed to Liberty Mutual for financial gain.

286.   The Defendants also knowingly misrepresented and concealed that the prescriptions for Fraudulent Equipment were – not based upon medical necessity but – the result of unlawful financial arrangements, were provided to the Defendants, and ultimately used as the basis to submit bills to Liberty Mutual to prevent Liberty Mutual from discovering that Fraudulent Equipment was billed to Liberty Mutual for financial gain.

287.   Additionally, the Defendants knowingly misrepresented and concealed that the prescriptions for Fraudulent Equipment provided to the Defendants were – not based upon medical necessity but – based upon predetermined fraudulent protocols and ultimately used as the basis to submit bills to Liberty Mutual in order to prevent Liberty Mutual from discovering that Fraudulent Equipment was billed to Liberty Mutual for financial gain.

288.   Furthermore, the Defendants knowingly misrepresented and concealed that the prescriptions for Fraudulent Equipment were based upon decisions made by laypersons who did not have the legal authority to issue medically necessary DME/OD, and not by an actual healthcare provider's prescription for medically necessary DME/OD, in order to prevent Liberty Mutual from discovering that Fraudulent Equipment were billed to Liberty Mutual for financial gain.

289.   Even more, the Defendants knowingly misrepresented and concealed that the HCPCS Codes for Fraudulent Equipment contained in the bills submitted by the Defendants to Liberty Mutual did not accurately reflect the type of Fraudulent Equipment provided to the Insureds

in order to prevent Liberty Mutual from discovering that Fraudulent Equipment were billed to Liberty Mutual for financial gain.

290.    Once Liberty Mutual began to suspect that the Defendants were engaged in fraudulent billing and treatment activities, Liberty Mutual requested that they submit additional verification, including but not limited to, examinations under oath to determine whether the charges submitted through the Defendants were legitimate.

291.    The Defendants hired law firms to pursue collection of the fraudulent charges from Liberty Mutual and other insurers. These law firms routinely filed expensive and time-consuming litigation against Liberty Mutual and other insurers if the charges were not promptly paid in full.

292.    Liberty Mutual is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially valid documents submitted to Liberty Mutual in support of the fraudulent charges at issue, combined with the material misrepresentations and fraudulent litigation activity described above, were designed to and did cause Liberty Mutual to rely upon them. As a result, Liberty Mutual incurred damages of more than $490,000.00 based upon the fraudulent charges representing payments made by Liberty Mutual to the Defendants.

293.    Based upon the Defendants' material misrepresentations, omissions, and other affirmative acts to conceal their fraud from Liberty Mutual, Liberty Mutual did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

**FIRST CAUSE OF ACTION**
**Against Akiva Ortho, BH Ortho, Biometric Sign, Concept Line, Global Versus, Hatzalah OS,**
**HN DME Ortho, MB Century, NK Reliable Ortho, Rambam Ortho,**
**Skyline BK, Topaz V and VR Ortho**
**(Declaratory Judgment, 28 U.S.C. §§ 2201 and 2202)**

294.    Liberty Mutual repeats and realleges each and every allegation contained in this Complaint as if fully set forth at length herein.

295.     There is an actual case in controversy between Liberty Mutual and each of the DME Providers regarding more than $1 million in fraudulent billing that has been submitted to Liberty Mutual in the names of DME Providers.

296.     The DME Providers have no right to receive payment for any pending bills submitted to Liberty Mutual because the Defendants did not comply with all local licensing laws the DME Providers falsified the true business address and business owners on the applications for Dealer in Products Licenses, and thus, were not properly lawfully licensed by the DCWP as required by regulations from the City of New York.

297.     The DME Providers also have no right to receive payment for any pending bills submitted to Liberty Mutual because the bills submitted to Liberty Mutual for Fraudulent Equipment were based – not upon medical necessity but – as a result of their participation in unlawful financial arrangements.

298.     The DME Providers have no right to receive payment for any pending bills submitted to Liberty Mutual because the bills submitted to Liberty Mutual were based – not upon medical necessity but – pursuant to predetermined fraudulent protocols designed solely to financially enrich the Defendants and others who are not presently known, rather than to treat the Insureds.

299.     The DME Providers have no right to receive payment for any pending bills submitted to Liberty Mutual because the DME Providers purportedly provided Fraudulent Equipment as a result of decisions made by laypersons, not based upon prescriptions for medically necessary items issued by healthcare providers who are licensed to issue such prescriptions.

300.     The DME Providers have no right to receive payment for any pending bills submitted to Liberty Mutual because – to the extent the DME Providers actually provided any Fraudulent Equipment – the DME Providers fraudulently misrepresented the Fee Schedule items

purportedly provided to Insureds as the HCPCS Codes identified in the bills did not accurately represent the Fee Schedule items provided to the Insureds.

301.     Accordingly, Liberty Mutual requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the Defendants have no right to receive payment for any pending bills submitted to Liberty Mutual under the names of Akiva Ortho, BH Ortho, Biometric Sign, Concept Line, Global Versus, Hatzalah OS, HN DME Ortho, MB Century, NK Reliable Ortho, Rambam Ortho, Skyline BK, Topaz V, and VR Ortho.

<div align="center">

**SECOND CAUSE OF ACTION**
**Against the Paper Owner Defendants and the John Doe Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

</div>

302.     Liberty Mutual repeats and realleges each and every allegation contained in this Complaint as if fully set forth at length herein.

303.     Akiva Ortho, BH Ortho, Biometric Sign, Concept Line, Global Versus, Hatzalah OS, HN DME Ortho, MB Century, NK Reliable Ortho, Rambam Ortho, Skyline BK, Topaz V, and VR Ortho together constitute an association-in-fact "enterprise" (the "DME Provider Enterprise"), as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

304.     The members of the DME Provider Enterprise are and have been associated through time, joined in purpose, and organized in a manner amenable to hierarchal and consensual decision making, with each member fulfilling a specific and necessary role to carry out and facilitate its common purpose. Specifically, Akiva Ortho, BH Ortho, Biometric Sign, Concept Line, Global Versus, Hatzalah OS, HN DME Ortho, MB Century, NK Reliable Ortho, Rambam Ortho, Skyline BK, Topaz V, and VR Ortho are ostensibly independent businesses – with different names and tax identification numbers – that were used as vehicles to achieve a common purpose – namely, to facilitate the submission of fraudulent charges to Liberty Mutual.

305. The DME Provider Enterprise operated using 13 separate names and tax identification numbers in order to limit the time period, volume of bills, and types of Fraudulent Equipment submitted under any individual name, in an attempt to avoid attracting the attention and scrutiny of Liberty Mutual and other New York automobile insurers to the volume of billing and the pattern of fraudulent charges originating from any one business. Accordingly, the carrying out of this scheme would be beyond the capacity of each member of the DME Provider Enterprise acting singly or without the aid of each other.

306. The DME Provider Enterprise is distinct from and has an existence beyond the pattern of racketeering that is described herein, namely by recruiting, employing, overseeing and coordinating many individuals who have been responsible for facilitating and performing a wide variety of administrative and ostensibly professional functions beyond the acts of mail fraud (i.e., the submission of the fraudulent bills to Liberty Mutual and other insurers), by creating and maintaining patient files and other records, by recruiting and supervising personnel, by negotiating and executing various contracts and/or illegal verbal agreements, by maintaining the bookkeeping and accounting functions necessary to manage the receipt and distribution of the insurance proceeds, and by retaining collection lawyers whose services also were used to generate payments from insurance companies to support all of the aforesaid functions.

307. The Paper Owner Defendants and the John Doe Defendants have each been employed by and/or associated with the DME Provider Enterprise.

308. The Paper Owner Defendants and the John Doe Defendants knowingly have conducted and/or participated, directly or indirectly, in the conduct of the DME Provider Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges seeking payments that the DME Provider

Enterprise was not eligible to receive under the No-Fault Laws, because:: (i) in every claim, that the DME Providers had lawful Dealer in Products Licenses and were entitled to No-Fault Benefits when in fact none of the DME Providers were lawfully licensed as they knowingly falsified information on their applications for a Dealer in Products License; (ii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment were provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual. The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibits "1" – "13".

309.    The DME Provider Enterprise's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular ways in which the Paper Owner Defendants and the John Doe Defendants operated the DME Providers, inasmuch as the DME Providers never operated as a legitimate DME/OD provider, never was eligible to bill for or collect No-Fault Benefits and acts of mail fraud

therefore were essential in order for the DME Providers to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through the DME Providers to the present day.

310.    The DME Provider Enterprise is engaged in inherently unlawful acts inasmuch as it continues to attempt collection on fraudulent billing submitted to Liberty Mutual and other New York automobile insurers. These inherently unlawful acts are taken by the DME Providers Enterprise in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent No-fault billing. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $490,000.00 pursuant to the fraudulent bills submitted by the Defendants through the DME Providers Enterprise.

311.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

<u>**THIRD CAUSE OF ACTION**</u>
**Against the Paper Owner Defendants and the John Doe Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

312.    Liberty Mutual repeats and realleges each and every allegation contained in this Complaint as if fully set forth at length herein.

313.    The DME Provider Enterprise is an association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1961(4), that engages in activities which affect interstate commerce.

314.    The Paper Owner Defendants and the John Doe Defendants are employed by and/or associated with the DME Providers Enterprise.

315.    The Paper Owner Defendants and the John Doe Defendants knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of the

DME Providers Enterprise's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted fraudulent charges seeking payments that the DME Providers were not eligible to receive under the No-Fault Laws because: (i) in every claim, that the DME Providers had lawful Dealer in Products Licenses and were entitled to No-Fault Benefits when in fact none of the DME Providers were lawfully licensed as they knowingly falsified information on their applications for a Dealer in Products License; (ii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment were provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual. The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibits "1" – "13".

316.    The Paper Owner Defendants and the John Doe Defendants knew of, agreed to, and acted in furtherance of the common overall objective (i.e., to defraud Liberty Mutual and other

insurers of money) by submitting or facilitating the submission of fraudulent charges to Liberty Mutual.

317.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid at least $490,000.00 pursuant to the fraudulent bills submitted by Defendants through the DME Providers Enterprise.

318.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### FOURTH CAUSE OF ACTION
**Against V. Sporykhina and the John Doe Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

319.    Liberty Mutual repeats and realleges each and every allegation contained in this Complaint as if fully set forth at length herein.

320.    Hatzalah OS is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

321.    V. Sporykhina and the John Doe Defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of Hatzalah OS's affairs through a pattern of racketeering activity consisting of repeated violations of the mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis since inception seeking payments that Hatzalah OS was not eligible to receive under the New York No-Fault Laws because: (i) in every claim, that Hatzalah OS had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Hatzalah OS was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the

prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment were provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual. The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "1".

322.    Hatzalah OS's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which V. Sporykhina and the John Doe Defendants operate Hatzalah OS, insofar as Hatzalah OS is not engaged as a legitimate supplier of DME, and therefore, acts of mail fraud are essential in order for Hatzalah OS to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a continued threat of criminal activity, as does the fact that the V. Sporykhina and the John Doe Defendants continue to attempt collection on the fraudulent billing submitted by Hatzalah OS to the present day.

323.    Hatzalah OS is engaged in inherently unlawful acts, inasmuch as it continues to attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers. These

inherently unlawful acts are taken by Hatzalah OS in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent no-fault billing.

324. Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid more than $73,000.00 pursuant to the fraudulent bills submitted through Hatzalah OS.

325. By reason of its injury, Liberty Mutual is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Against Hatzalah OS, V. Sporykhina, and the John Doe Defendants
### (Common Law Fraud)

326. Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

327. Hatzalah OS, V. Sporykhina, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent charges seeking payment for the Fraudulent Services.

328. The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Hatzalah OS had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Hatzalah OS was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment

were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.

329.    Hatzalah OS, V. Sporykhina, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Hatzalah OS that were not compensable under New York no-fault insurance laws.

330.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $73,000.00 pursuant to the fraudulent bills submitted by Hatzalah OS, V. Sporykhina, and the John Doe Defendants.

331.    Hatzalah OS, V. Sporykhina, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

332.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### Against Hatzalah OS, V. Sporykhina, and the John Doe Defendants
### (Unjust Enrichment)

333.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

334.     As set forth above, Hatzalah OS, V. Sporykhina, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

335.     When Liberty Mutual paid the bills and charges submitted by or on behalf of Hatzalah OS for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

336.     Hatzalah OS, V. Sporykhina, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Hatzalah OS, V. Sporykhina, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

337.     Hatzalah OS, V. Sporykhina, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

338.     By reason of the above, Hatzalah OS, V. Sporykhina, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $73,000.00.

## SEVENTH CAUSE OF ACTION
### Against M. Sporykhin and the John Doe Defendants
### (Violation of RICO, 18 U.S.C. § 1962(c))

339.     Liberty Mutual repeats and realleges each and every allegation contained in this Complaint as if fully set forth at length herein.

340.     HN DME Ortho is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

341.   M. Sporykhin and the John Doe Defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of HN DME Ortho's affairs through a pattern of racketeering activity consisting of repeated violations of the mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis since inception seeking payments that HN DME Ortho was not eligible to receive under the New York No-Fault Laws because: (i) in every claim, that HN DME Ortho had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact HN DME Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment were provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual. The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "2".

342.     HN DME Ortho's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which M. Sporykhin and the John Doe Defendants operate HN DME Ortho, insofar as HN DME Ortho is not engaged as a legitimate supplier of DME, and therefore, acts of mail fraud are essential in order for HN DME Ortho to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a continued threat of criminal activity, as does the fact that the M. Sporykhin and the John Doe Defendants continue to attempt collection on the fraudulent billing submitted by HN DME Ortho to the present day.

343.     HN DME Ortho is engaged in inherently unlawful acts, inasmuch as it continues to attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers.  These inherently unlawful acts are taken by HN DME Ortho in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent no-fault billing.

344.     Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid more than $87,000.00 pursuant to the fraudulent bills submitted through HN DME Ortho.

345.     By reason of its injury, Liberty Mutual is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### EIGHTH CAUSE OF ACTION
**Against HN DME Ortho, M. Sporykhin, and the John Doe Defendants**
**(Common Law Fraud)**

346.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

347.    HN DME Ortho, M. Sporykhin, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

348.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that HN DME Ortho had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact HN DME Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.

349.    HN DME Ortho, M. Sporykhin, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated

effort to induce Liberty Mutual to pay charges submitted through HN DME Ortho that were not compensable under New York no-fault insurance laws.

350.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $87,000.00 pursuant to the fraudulent bills submitted by HN DME Ortho, M. Sporykhin, and the John Doe Defendants.

351.    HN DME Ortho, M. Sporykhin, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

352.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**
**Against HN DME Ortho, M. Sporykhin, and the John Doe Defendants**
**(Unjust Enrichment)**

353.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

354.    As set forth above, HN DME Ortho, M. Sporykhin, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

355.    When Liberty Mutual paid the bills and charges submitted by or on behalf of HN DME Ortho for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

356.    HN DME Ortho, M. Sporykhin, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that HN DME

Ortho, M. Sporykhin, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

357.    HN DME Ortho, M. Sporykhin, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

358.    By reason of the above, HN DME Ortho, M. Sporykhin, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $87,000.00.

**TENTH CAUSE OF ACTION**
**Against Z. Reshylova and the John Doe Defendants**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

359.    Liberty Mutual repeats and realleges each and every allegation contained in this Complaint as if fully set forth at length herein.

360.    Skyline BK is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

361.    Z. Reshylova and the John Doe Defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of Skyline BK's affairs through a pattern of racketeering activity consisting of repeated violations of the mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis since inception seeking payments that Skyline BK was not eligible to receive under the New York No-Fault Laws because: (i) in every claim, that Skyline BK had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Skyline BK was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used

to financially enrich those that participated in the scheme; (iii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment were provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual. The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "3".

362.    Skyline BK's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which Z. Reshylova and the John Doe Defendants operate Skyline BK, insofar as Skyline BK is not engaged as a legitimate supplier of DME, and therefore, acts of mail fraud are essential in order for Skyline BK to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a continued threat of criminal activity, as does the fact that the Z. Reshylova and the John Doe Defendants continue to attempt collection on the fraudulent billing submitted by Skyline BK to the present day.

363.    Skyline BK is engaged in inherently unlawful acts, inasmuch as it continues to attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers.  These

inherently unlawful acts are taken by Skyline BK in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent no-fault billing.

364.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid more than $58,000.00 pursuant to the fraudulent bills submitted through Skyline BK.

365.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
**Against Skyline BK, Z. Reshylova, and the John Doe Defendants**
**(Common Law Fraud)**

366.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

367.    Skyline BK, Z. Reshylova, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

368.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Skyline BK had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Skyline BK was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment

were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.

369.    Skyline BK, Z. Reshylova, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Skyline BK that were not compensable under New York no-fault insurance laws.

370.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $58,000.00 pursuant to the fraudulent bills submitted by Skyline BK, Z. Reshylova, and the John Doe Defendants.

371.    Skyline BK, Z. Reshylova, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

372.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWELFTH CAUSE OF ACTION
### Against Skyline BK, Z. Reshylova, and the John Doe Defendants
### (Unjust Enrichment)

373.   Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

374.   As set forth above, Skyline BK, Z. Reshylova, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

375.   When Liberty Mutual paid the bills and charges submitted by or on behalf of Skyline BK for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

376.   Skyline BK, Z. Reshylova, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Skyline BK, Z. Reshylova, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

377.   Skyline BK, Z. Reshylova, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

378.   By reason of the above, Skyline BK, Z. Reshylova, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $58,000.00.

## THIRTEENTH CAUSE OF ACTION
### Against V. Sporykhina and the John Doe Defendants
### (Violation of RICO, 18 U.S.C. § 1962(c))

379.   Liberty Mutual repeats and realleges each and every allegation contained in this Complaint as if fully set forth at length herein.

380.   BH Ortho is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

381.    V. Sporykhina and the John Doe Defendants knowingly conducted and/or participated, directly or indirectly, in the conduct of BH Ortho's affairs through a pattern of racketeering activity consisting of repeated violations of the mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted hundreds of fraudulent charges on a continuous basis since inception seeking payments that BH Ortho was not eligible to receive under the New York No-Fault Laws because: (i) in every claim, that BH Ortho had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact BH Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) in every claim, that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment were provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) in many claims, to the extent that any Fraudulent Equipment was actually provided, that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual. The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "4".

382.    BH Ortho's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers.  The predicate acts of mail fraud are the regular way in which V. Sporykhina and the John Doe Defendants operate BH Ortho, insofar as BH Ortho is not engaged as a legitimate supplier of DME, and therefore, acts of mail fraud are essential in order for BH Ortho to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a continued threat of criminal activity, as does the fact that the V. Sporykhina and the John Doe Defendants continue to attempt collection on the fraudulent billing submitted by BH Ortho to the present day.

383.    BH Ortho is engaged in inherently unlawful acts, inasmuch as it continues to attempt collection on fraudulent billing submitted to Liberty Mutual and other insurers.  These inherently unlawful acts are taken by BH Ortho in pursuit of inherently unlawful goals – namely, the theft of money from Liberty Mutual and other insurers through fraudulent no-fault billing.

384.    Liberty Mutual has been injured in its business and property by reason of the above-described conduct in that it has paid more than $61,000.00 pursuant to the fraudulent bills submitted through BH Ortho.

385.    By reason of its injury, Liberty Mutual is entitled to treble damages, costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### FOURTEENTH CAUSE OF ACTION
**Against BH Ortho, V. Sporykhina, and the John Doe Defendants**
**(Common Law Fraud)**

386.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

387.    BH Ortho, V. Sporykhina, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed

material facts from Liberty Mutual in the course of their submission of hundreds of fraudulent charges seeking payment for the Fraudulent Services.

388.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that BH Ortho had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact BH Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.

389.     BH Ortho, V. Sporykhina, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through BH Ortho that were not compensable under New York no-fault insurance laws.

390.     Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $61,000.00 pursuant to the fraudulent bills submitted by BH Ortho, V. Sporykhina, and the John Doe Defendants.

391.     BH Ortho, V. Sporykhina, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

392.     Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<div align="center">

**FIFTEENTH CAUSE OF ACTION**
**Against BH Ortho, V. Sporykhina, and the John Doe Defendants**
**(Unjust Enrichment)**

</div>

393.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

394.     As set forth above, BH Ortho, V. Sporykhina, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

395.     When Liberty Mutual paid the bills and charges submitted by or on behalf of BH Ortho for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

396.     BH Ortho, V. Sporykhina, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that BH Ortho, V. Sporykhina, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

397.    BH Ortho, V. Sporykhina, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

398.    By reason of the above, BH Ortho, V. Sporykhina, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $61,000.00.

<div align="center">

**SIXTEENTH CAUSE OF ACTION**
**Against NK Reliable Ortho, N. Komisar, and the John Doe Defendants**
**(Common Law Fraud)**

</div>

399.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

400.    NK Reliable Ortho, N. Komisar, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

401.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that NK Reliable Ortho had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact NK Reliable Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon

proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.

402.     NK Reliable Ortho, N. Komisar, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through NK Reliable Ortho that were not compensable under New York no-fault insurance laws.

403.     Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $39,000.00 pursuant to the fraudulent bills submitted by NK Reliable Ortho, N. Komisar, and the John Doe Defendants.

404.     NK Reliable Ortho, N. Komisar, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

405.     Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<div align="center">

**SEVENTEENTH CAUSE OF ACTION**
**Against NK Reliable Ortho, N. Komisar, and the John Doe Defendants**
**(Unjust Enrichment)**

</div>

406.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

407.     As set forth above, NK Reliable Ortho, N. Komisar, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

408.     When Liberty Mutual paid the bills and charges submitted by or on behalf of NK Reliable Ortho for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

409.     NK Reliable Ortho, N. Komisar, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that NK Reliable Ortho, N. Komisar, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

410.     NK Reliable Ortho, N. Komisar, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

411.     By reason of the above, NK Reliable Ortho, N. Komisar, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $39,000.00.

## EIGHTEENTH CAUSE OF ACTION
### Against Rambam Ortho, M. Sporykhin, and the John Doe Defendants
### (Common Law Fraud)

412.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

413.     Rambam Ortho, M. Sporykhin, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

414.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Rambam Ortho had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Rambam Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.

415.     Rambam Ortho, M. Sporykhin, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Rambam Ortho that were not compensable under New York no-fault insurance laws.

416.     Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property

by reason of the above-described conduct in that it has paid at least $83,000.00 pursuant to the fraudulent bills submitted by Rambam Ortho, M. Sporykhin, and the John Doe Defendants.

417.    Rambam Ortho, M. Sporykhin, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

418.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<div align="center">

**NINETEENTH CAUSE OF ACTION**
**Against Rambam Ortho, M. Sporykhin, and the John Doe Defendants**
**(Unjust Enrichment)**

</div>

419.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

420.    As set forth above, Rambam Ortho, M. Sporykhin, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

421.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Rambam Ortho for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

422.    Rambam Ortho, M. Sporykhin, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Rambam Ortho, M. Sporykhin, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

423.    Rambam Ortho, M. Sporykhin, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

424.     By reason of the above, Rambam Ortho, M. Sporykhin, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $83,000.00.

<div align="center">

**TWENTIETH CAUSE OF ACTION**
**Against Akiva Ortho, Vo. Reshylov, and the John Doe Defendants**
**(Common Law Fraud)**

</div>

425.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

426.     Akiva Ortho, Vo. Reshylov, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

427.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Akiva Ortho had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Akiva Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the

representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.  The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of fraudulent activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "7".

428.    Akiva Ortho, Vo. Reshylov, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Akiva Ortho that were not compensable under New York no-fault insurance laws.

429.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $15,000.00 pursuant to the fraudulent bills submitted by Akiva Ortho, Vo. Reshylov, and the John Doe Defendants.

430.    Akiva Ortho, Vo. Reshylov, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

431.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<div align="center">

**TWENTY-FIRST CAUSE OF ACTION**
**Against Akiva Ortho, Vo. Reshylov, and the John Doe Defendants**
**(Unjust Enrichment)**

</div>

432.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

433.     As set forth above, Akiva Ortho, Vo. Reshylov, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

434.     When Liberty Mutual paid the bills and charges submitted by or on behalf of Akiva Ortho for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

435.     Akiva Ortho, Vo. Reshylov, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Akiva Ortho, Vo. Reshylov, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

436.     Akiva Ortho, Vo. Reshylov, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

437.     By reason of the above, Akiva Ortho, Vo. Reshylov, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $15,000.00.

## TWENTY-SECOND CAUSE OF ACTION
### Against VR Ortho, Vi. Reshylov, and the John Doe Defendants
### (Common Law Fraud)

438.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

439.     VR Ortho, Vi. Reshylov, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

440.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that VR Ortho had a lawful Dealer in Products License

and was entitled to No-Fault Benefits when in fact VR Ortho was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.  The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of fraudulent activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "8".

441.    VR Ortho, Vi. Reshylov, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through VR Ortho that were not compensable under New York no-fault insurance laws.

442.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property

by reason of the above-described conduct in that it has paid at least $16,000.00 pursuant to the fraudulent bills submitted by VR Ortho, Vi. Reshylov, and the John Doe Defendants.

443.    VR Ortho, Vi. Reshylov, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

444.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### TWENTY-THIRD CAUSE OF ACTION
**Against VR Ortho, Vi. Reshylov, and the John Doe Defendants**
**(Unjust Enrichment)**

445.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

446.    As set forth above, VR Ortho, Vi. Reshylov, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

447.    When Liberty Mutual paid the bills and charges submitted by or on behalf of VR Ortho for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

448.    VR Ortho, Vi. Reshylov, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that VR Ortho, Vi. Reshylov, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

449.    VR Ortho, Vi. Reshylov, and the John Doe Defendants retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

450.     By reason of the above, VR Ortho, Vi. Reshylov, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $16,000.00.

## TWENTY-FOURTH CAUSE OF ACTION
### Against Global Versus, V. Savchyn, and the John Doe Defendants
### (Common Law Fraud)

451.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

452.     Global Versus, V. Savchyn, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

453.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Global Versus had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Global Versus was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes

contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.  The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of fraudulent activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "9".

454.    Global Versus, V. Savchyn, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Global Versus that were not compensable under New York no-fault insurance laws.

455.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $13,000.00 pursuant to the fraudulent bills submitted by Global Versus, V. Savchyn, and the John Doe Defendants.

456.    Global Versus, V. Savchyn, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

457.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## TWENTY-FIFTH CAUSE OF ACTION
### Against Global Versus, V. Savchyn, and the John Doe Defendants
### (Unjust Enrichment)

458.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

459.    As set forth above, Global Versus, V. Savchyn, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

460.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Global Versus for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

461.    Global Versus, V. Savchyn, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Global Versus, V. Savchyn, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

462.    Global Versus, V. Savchyn, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

463.    By reason of the above, Global Versus, V. Savchyn, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $13,000.00.

### TWENTY-SIXTH CAUSE OF ACTION
**Against Topaz V, V. Savchyn, and the John Doe Defendants**
**(Common Law Fraud)**

464.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

465.    Topaz V, V. Savchyn, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

466.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Topaz V had a lawful Dealer in Products License

and was entitled to No-Fault Benefits when in fact Topaz V was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.  The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of fraudulent activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "10".

467.    Topaz V, V. Savchyn, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Topaz V that were not compensable under New York no-fault insurance laws.

468.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property

by reason of the above-described conduct in that it has paid at least $16,000.00 pursuant to the fraudulent bills submitted by Topaz V, V. Savchyn, and the John Doe Defendants.

469.    Topaz V, V. Savchyn, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

470.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### TWENTY-SEVENTH CAUSE OF ACTION
**Against Topaz V, V. Savchyn, and the John Doe Defendants**
**(Unjust Enrichment)**

471.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

472.    As set forth above, Topaz V, V. Savchyn, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

473.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Topaz V for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

474.    Topaz V, V. Savchyn, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Topaz V, V. Savchyn, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

475.    Topaz V, V. Savchyn, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

476.     By reason of the above, Topaz V, V. Savchyn, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $16,000.00.

### TWENTY-EIGHTH CAUSE OF ACTION
**Against Biometric Sign, Z. Reshylova, and the John Doe Defendants**
**(Common Law Fraud)**

477.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

478.     Biometric Sign, Z. Reshylova, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

479.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Biometric Sign had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact Biometric Sign was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes

contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.  The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of fraudulent activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "11".

480.    Biometric Sign, Z. Reshylova, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Biometric Sign that were not compensable under New York no-fault insurance laws.

481.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $16,000.00 pursuant to the fraudulent bills submitted by Biometric Sign, Z. Reshylova, and the John Doe Defendants.

482.    Biometric Sign, Z. Reshylova, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

483.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<div align="center">

**<u>TWENTY-NINTH CAUSE OF ACTION</u>**
**Against Biometric Sign, Z. Reshylova, and the John Doe Defendants**
**(Unjust Enrichment)**

</div>

484.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

485.     As set forth above, Biometric Sign, Z. Reshylova, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

486.     When Liberty Mutual paid the bills and charges submitted by or on behalf of Biometric Sign for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

487.     Biometric Sign, Z. Reshylova, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Biometric Sign, Z. Reshylova, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

488.     Biometric Sign, Z. Reshylova, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

489.     By reason of the above, Biometric Sign, Z. Reshylova, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $16,000.00.

### THIRTIETH CAUSE OF ACTION
**Against Concept Line, Vo. Reshylov, and the John Doe Defendants**
**(Common Law Fraud)**

490.     Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

491.     Concept Line, Vo. Reshylov, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

492.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that Concept Line had a lawful Dealer in Products

License and was entitled to No-Fault Benefits when in fact Concept Line was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.  The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of fraudulent activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "12".

493.    Concept Line, Vo. Reshylov, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through Concept Line that were not compensable under New York no-fault insurance laws.

494.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property

by reason of the above-described conduct in that it has paid at least $3,500.00 pursuant to the fraudulent bills submitted by Concept Line, Vo. Reshylov, and the John Doe Defendants.

495.    Concept Line, Vo. Reshylov, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

496.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<div align="center">

**THIRTY-FIRST CAUSE OF ACTION**
**Against Concept Line, Vo. Reshylov, and the John Doe Defendants**
**(Unjust Enrichment)**

</div>

497.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

498.    As set forth above, Concept Line, Vo. Reshylov, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

499.    When Liberty Mutual paid the bills and charges submitted by or on behalf of Concept Line for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

500.    Concept Line, Vo. Reshylov, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that Concept Line, Vo. Reshylov, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

501.    Concept Line, Vo. Reshylov, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

502.    By reason of the above, Concept Line, Vo. Reshylov, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $3,500.00.

<div align="center">

**THIRTY-SECOND CAUSE OF ACTION**
**Against MB Century, N. Savchyna, and the John Doe Defendants**
**(Common Law Fraud)**

</div>

503.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in the paragraphs set forth above.

504.    MB Century, N. Savchyna, and the John Doe Defendants intentionally and knowingly made false and fraudulent statements of material fact to Liberty Mutual and concealed material facts from Liberty Mutual in the course of their submission of fraudulent charges seeking payment for the Fraudulent Services.

505.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) the representation that MB Century had a lawful Dealer in Products License and was entitled to No-Fault Benefits when in fact MB Century was not lawfully licensed as they knowingly falsified the business address and owner information on their application for a Dealer in Products; (ii) the representation that that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided as a result of unlawful financial arrangements, which were used to financially enrich those that participated in the scheme; (iii) the representation that the prescriptions for Fraudulent Equipment were for reasonable and medically necessary DME and/or OD when in fact the prescriptions were provided pursuant to predetermined fraudulent protocols and not based upon medical necessity; (iv) the representation that the Fraudulent Equipment was issued based upon proper prescriptions by licensed healthcare providers when the Fraudulent Equipment was provided pursuant to decisions from laypersons who are not legally authorized to prescribe DME and/or OD; and (v) the

representation that the Fraudulent Equipment accurately reflected the HCPCS Codes contained in the bills submitted to Liberty Mutual when in fact the Fraudulent Equipment did not meet the requirements for the specific HCPCS Codes billed to Liberty Mutual, to the extent that any Fraudulent Equipment was actually provided.  The fraudulent billings and corresponding mailings submitted to Liberty Mutual that comprise, in part, the pattern of fraudulent activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "13".

506.    MB Century, N. Savchyna, and the John Doe Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce Liberty Mutual to pay charges submitted through MB Century that were not compensable under New York no-fault insurance laws.

507.    Liberty Mutual justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $6,000.00 pursuant to the fraudulent bills submitted by MB Century, N. Savchyna, and the John Doe Defendants.

508.    MB Century, N. Savchyna, and John Doe Defendant's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Liberty Mutual to recover punitive damages.

509.    Accordingly, by virtue of the foregoing, Liberty Mutual is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### THIRTY-THIRD CAUSE OF ACTION
**Against MB Century, N. Savchyna, and the John Doe Defendants**
**(Unjust Enrichment)**

510.    Liberty Mutual incorporates, as though fully set forth herein, each and every allegation in in the paragraphs set forth above.

511.     As set forth above, MB Century, N. Savchyna, and the John Doe Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of Liberty Mutual.

512.     When Liberty Mutual paid the bills and charges submitted by or on behalf of MB Century for No-Fault Benefits, it reasonably believed that it was legally obligated to make such payments based on Defendants' improper, unlawful, and/or unjust acts.

513.     MB Century, N. Savchyna, and the John Doe Defendants have been enriched at Liberty Mutual's expense by Liberty Mutual's payments, which constituted a benefit that MB Century, N. Savchyna, and the John Doe Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

514.     MB Century, N. Savchyna, and John Doe Defendant's retention of Liberty Mutual's payments violates fundamental principles of justice, equity and good conscience.

515.     By reason of the above, MB Century, N. Savchyna, and the John Doe Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $6,000.00.

**WHEREFORE**, Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company demand that a Judgment be entered in their favor:

A.     On the First Cause of Action against Akiva Ortho, BH Ortho, Biometric Sign, Concept Line, Global Versus, Hatzalah OS, HN DME Ortho, MB Century, NK Reliable Ortho, Rambam Ortho, Skyline BK, Topaz V, and VR Ortho for a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Akiva Ortho, BH Ortho, Biometric Sign, Concept Line, Global Versus, Hatzalah OS, HN DME Ortho, MB Century, NK Reliable Ortho, Rambam

Ortho, Skyline BK, Topaz V, and VR Ortho have no right to receive payment for any pending bills submitted to Liberty Mutual;

B.    On the Second Cause of action against the Paper Owner Defendants and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but more than $490,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.    On the Third Cause of Action against the Paper Owner Defendants and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but more than $490,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.    On the Fourth Cause of Action against V. Sporykhina and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but more than $73,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

E.    On the Fifth Cause of Action against Hatzalah OS, V. Sporykhina, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $73,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.    On the Sixth Cause of Action against Hatzalah OS, V. Sporykhina, and the John Doe Defendants for more than $73,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

G.    On the Seventh Cause of Action against M. Sporykhin and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but

more than $87,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.      On the Eighth Cause of Action against HN DME Ortho, M. Sporykhin, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $87,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

I.      On the Ninth Cause of Action against HN DME Ortho, M. Sporykhin, and the John Doe Defendants for more than $87,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

J.      On the Tenth Cause of Action against Z. Reshylova and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but more than $58,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

K.      On the Eleventh Cause of Action against Skyline BK, Z. Reshylova, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $58,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

L.      On the Twelfth Cause of Action against Skyline BK, Z. Reshylova, and the John Doe Defendants for more than $58,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

M.      On the Thirteenth Cause of Action against V. Sporykhina, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but more than $61,000.00 together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

N.      On the Fourteenth Cause of Action against BH Ortho, V. Sporykhina, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $61,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

O.      On the Fifteenth Cause of Action against BH Ortho, V. Sporykhina, and the John Doe Defendants for more than $61,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

P.      On the Sixteenth Cause of Action against NK Reliable Ortho, N. Komisar, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $39,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

Q.      On the Seventeenth Cause of Action against NK Reliable Ortho, N. Komisar, and the John Doe Defendants for more than $39,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

R.      On the Eighteenth Cause of Action against Rambam Ortho, M. Sporykhin and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $83,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

S.      On the Nineteenth Cause of Action against Rambam Ortho, M. Sporykhin and the John Doe Defendants for more than $83,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

T.      On the Twentieth Cause of Action against Akiva Ortho, Vo. Reshylov, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be

determined at trial but in excess of $15,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

U.      On the Twenty-First Cause of Action against Akiva Ortho, Vo. Reshylov, and the John Doe Defendants for more than $15,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

V.      On the Twenty-Second Cause of Action against VR Ortho, Vi. Reshylov, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $14,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

W.      On the Twenty-Third Cause of Action against VR Ortho, Vi. Reshylov, and the John Doe Defendants for more than $14,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

X.      On the Twenty-Fourth Cause of Action against Global Versus, V. Savchyn, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $13,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

Y.      On the Twenty-Fifth Cause of Action against Global Versus, V. Savchyn, and the John Doe Defendants for more than $13,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

Z.      On the Twenty-Sixth Cause of Action against Topaz V, V. Savchyn, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $16,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

AA.	On the Twenty-Seventh Cause of Action against Topaz V, V. Savchyn, and the John Doe Defendants for more than $16,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

BB.	On the Twenty-Eighth Cause of Action against Biometric Sign, Z. Reshylova, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $16,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

CC.	On the Twenty-Ninth Cause of Action against Biometric Sign, Z. Reshylova, and the John Doe Defendants for more than $16,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

DD.	On the Thirtieth Cause of Action against Concept Line, Vo. Reshylov, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $3,500.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

EE.	On the Thirty-First Cause of Action against Concept Line, Vo. Reshylov, and the John Doe Defendants for more than $3,500.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper;

FF.	On the Thirtieth-Second Cause of Action against MB Century, N. Savchyna, and the John Doe Defendants for compensatory damages in favor of Liberty Mutual in an amount to be determined at trial but in excess of $6,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

GG.	On the Thirty-Third Cause of Action against MB Century, N. Savchyna, and the John Doe Defendants for more than $6,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: April 12, 2024
      Uniondale, New York

RIVKIN RADLER LLP


By: *Barry I. Levy*
      Barry I. Levy, Esq.
      Frank P. Tiscione, Esq.
      Philip P. Nash, Esq.
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, LM Property and Casualty Insurance Company, Safeco Company of Indiana, and American States Insurance Company*